IN THE MATTER OF: GUARDIANSHIP OF JAMES BRYANT HALL, INFANT; BEATRICE HIATT FAGAN AND HUSBAND, LEO FRANK FAGAN, AND LACY BRYANT HALL, SR., RESPONDENT.

(Filed 11 June, 1952.)

**1. Appeal and Error § 6c (2)—**

An exception to the judgment or the signing of the judgment presents for decision the sole question whether the facts found support the judg-ment.

**2. Guardian and Ward § 3—**

The clerk of the Superior Court in the county in which an infant resides has jurisdiction to appoint a guardian for such infant. G.S. 33-1.

**3. Domicile § 3—**

An unemancipated infant cannot select or change his domicile.

**4. Same—**

A legitimate child at birth takes the domicile of its father, and its domi-cile so continues after the death of its father until its domicile is legally

changed. As to whether its surviving mother upon remarriage may change the domicile of the child by changing her own domicile, *quaere?* G.S. 33-3.

**5. Same—**

Where the mother and father of an infant both die and its paternal grandfather takes the child to his home and actually stands *in loco parentis*, such grandfather is the natural guardian, and his domicile determines that of the child.

**6. Domicile § 2—**

As a general rule, an adult student does not acquire a legal domicile at the educational institution where he resides with the ultimate intention of returning to his home.

**7. Guardian and Ward § 3: Domicile § 3—Domicile of natural guardian of orphan is its domicile.**

The parents and grandparents of the child in question resided in Alamance County. Upon the death of the child's father the child and its mother resided with the child's paternal grandparents. The mother of the child later remarried. Upon the death of its mother the child was taken to the home of its paternal grandparents in Alamance County and resided with them. *Held:* Irrespective of any change in residence by the child's mother during the period of her second marriage, upon her death the domicile of its grandfather became the child's domicile, and the clerk of the Superior Court of Alamance County had jurisdiction to appoint such grandfather the guardian of the person of the child. Later order of such clerk striking out the appointment for want of jurisdiction was erroneous, and order of the clerk of another county appointing the child's maternal aunt its guardian is void.

**8. Same—**

There may be separate appointments of guardian of the person and of the estate of an orphan. G.S. 33-6.

APPEAL by Beatrice Hiatt Fagan and husband, Leo Frank Fagan, from *Carr, Resident Judge,* in Chambers, 2 April, 1952, ALAMANCE.

Proceedings before Clerks of Superior Court of Alamance County, and of Orange County, respectively, relating to guardianship of the person of James Bryant Hall, Infant, heard by the Honorable Leo Carr, Resident Judge of the Tenth Judicial District, upon appeals from the respective orders of said Clerks.

The record discloses these uncontroverted facts:

I. James Bryant Hall was born 25 March, 1944, of the marriage of Lacy Bryant Hall, Jr., and his wife Katherine Louise Hiatt Hall. His father, Lacy Bryant Hall, Jr., resident of Alamance County, North Carolina, was killed on or about 2 September, 1944, while in the Armed Forces of the United States during World War II. Thereafter on 12 April, 1947, his mother, Katherine Louise Hiatt Hall, married Robert Leon Kirkland. She died on 15 June, 1951.

II.   Thereafter on 16 July, 1951, Lacy Bryant Hall, Sr., paternal grandfather of James Bryant Hall, and with whom he was then residing in Alamance County, North Carolina, applied to the Clerk of Superior Court of said county for appointment, and was appointed, as guardian of the person of James Bryant Hall.

III.   On 25 October, 1951, Beatrice Hiatt Fagan, maternal aunt of James Bryant Hall, and her husband, Leo Frank Fagan, residents of Guilford County, North Carolina, applied to the Clerk of Superior Court of Orange County, North Carolina, for appointment of them as guardians of the person of James Bryant Hall.  In respect to this application, Lacy Bryant Hall, Sr., and his wife appeared, and moved for its dismissal for lack of jurisdiction in the Clerk of Superior Court of Orange County in the premises.  Nevertheless, the application was granted by the Assistant Clerk, and in accordance therewith an order was entered by him on 28 November, 1951.

.  To this order Lacy Bryant Hall, Sr., and his wife excepted, and appealed to the Superior Court.

IV.   Thereafter, and pending the said appeal, by petition sworn to 5 February, 1952, Beatrice Hiatt Fagan and Leo Frank Fagan petitioned the Clerk of Superior Court of Alamance County, and moved that the order of 16 July, 1951, appointing Lacy Bryant Hall, Sr., as guardian of the person of James Bryant Hall, be vacated and declared void, upon the ground that the Clerk of Superior Court of Alamance County had no jurisdiction in the matter.  Lacy Bryant Hall, Sr., appeared and resisted the motion.  However, the Clerk entered an order on 11 February, 1952, vacating and declaring void his order of 16 July, 1951.  Lacy Bryant Hall, Sr., objected thereto and appealed to Superior Court.

V.   These appeals, as above set forth, that is, (1) from the order dated 28 November, 1951, entered by the Assistant Clerk of Superior Court of Orange County, and (2) from the order, dated 11 February, 1952, entered by the Clerk of Superior Court of Alamance County, came on for hearing before the Resident Judge of the Tenth Judicial District, and by consent of the parties the appeals were consolidated for hearing, and were heard on 16 February, 1952, at the courthouse in Graham, North Carolina, when and where Lacy Bryant Hall, Sr., was present with his counsel, and Beatrice Hiatt Fagan and husband, Leo Frank Fagan, were present with their counsel, and "upon the pleadings, the admission of the parties, and the evidence introduced at the hearing," the court found facts, in addition to those uncontroverted as above stated, substantially these:

1. Lacy Bryant Hall, Jr., father of James Bryant Hall, was a resident of Alamance County, North Carolina, all of his life and enlisted in the Armed Forces of the United States from said county; that the parents of Lacy Bryant Hall, Jr., have been residents of said county for many years;

that Katherine Hiatt Hall, mother of James Bryant. Hall, before her marriage to Lacy Bryant Hall, Jr., and at the time of his death, was a resident of Alamance County, and her parents were residents of said county, and that after the death of Lacy. Bryant Hall, Jr., his wife, Katherine Hiatt Hall and her child, James Bryant Hall, resided with the parents of Lacy Bryant Hall, Jr., to wit: Lacy Bryant Hall, Sr., and wife, until Katherine Hiatt Hall remarried.

2. That after the marriage of Katherine Hiatt Hall and Robert Leon Kirkland, 12 April, 1947, they resided in Alamance County until the fall of 1947, when they moved to Durham County where Kirkland engaged in a business enterprise, and they resided there until shortly after Christmas, 1949; that the Kirklands then moved to Chapel Hill, Orange County, for the purpose of permitting Kirkland to matriculate as a student at the University of North Carolina, and he registered as such student, and this was his only purpose for living in Chapel Hill, and they lived there until June, 1951; that he and she voted in Durham County in the primary election of 1950; that on 25 October, 1950, by and with their consent, the Security National Bank of Greensboro, Guilford County, North Carolina, was appointed by Clerk of Superior Court of Orange County as guardian of the property of James Bryant Hall; that they, the Kirklands, voted in Durham County in the general election in November, 1950; that in January, 1951, they listed for taxation in Orange County such personal property as he had in Chapel Hill; and that James Bryant Hall resided with his mother and step-father from date of their marriage until her death.

3. That shortly after the death of Katherine Hiatt Hall Kirkland, 15 June, 1951, James Bryant Hall was taken to the home of his aunt, Beatrice Hiatt Fagan and her husband, Leo Frank Fagan, in Greensboro, Guilford County, and, within a few days, was taken by them to the home of his grandparents, Lacy Bryant Hall, Sr., and his wife, in Burlington, Alamance County; and that there was some discussion as to where he should reside,—Beatrice Hiatt Fagan indicating a desire that he stay with his grandparents during the summertime and reside with her in the wintertime,—that such was the request of his mother, and the grand-father stating that there should be some definite policy adopted in respect to the residence of the child—that his son Lacy Bryant Hall, Jr., had requested that if anything happened to him he would expect his father to look after his child.

4. That when Lacy Bryant Hall, Sr., was appointed guardian 16 July, 1951, as above stated, by Clerk of Superior Court of Alamance County, James Bryant Hall was in the home of his grandparents, Lacy Bryant Hall, Sr., and wife in Alamance County; that he was living with his grandfather on 28 November, 1951, when Beatrice Hiatt Fagan and her

husband, Leo Frank Fagan, applied to and were appointed guardians of him by order of Assistant Clerk of Superior Court of Orange County; and that at that time the order of the Clerk of Superior Court of Alamance County appointing Lacy Bryant Hall, Sr., guardian, as above stated, was in full force and effect and he was acting as such guardian.

5. That at the time the orders of Clerk of Superior Court of Alamance County, and the order of Assistant Clerk of Superior Court of Orange County were entered the grandparents of James Bryant Hall were his next of kin; that his paternal grandparents were residents of Alamance County, as was his maternal grandfather,—his only maternal grandparent; that the maternal grandfather was not then, and is not now, in position to give the child a satisfactory and comfortable home; that if the child lives with any of his maternal relatives it will be necessary for him to live with one of his aunts, Mrs. Beatrice Hiatt Fagan, in Greensboro, whose home is a fit and proper place in which the child can reside; and that his paternal grandparents, Lacy Bryant Hall, Sr., and his wife have a comfortable home in Burlington, Alamance County, wherein the child can reside, and it is for his best interest that he remain in the care and custody of his paternal grandparents the greater part of the time.

6. That the child, James Bryant Hall, has an estate that comes in the form of government benefits paid to him by reason of the fact that his father was killed in the military service of the United States, and it is held by the Security National Bank of Greensboro, Guilford County, N. C., under the order of Clerk of Superior Court of Orange County, appointing it as guardian of his estate.

Upon the foregoing facts, the court, being of opinion that the Clerk of Superior Court of Alamance County had jurisdiction to enter the order of 16 July, 1951, appointing the grandfather, Lacy Bryant Hall, Sr., guardian of the person of James Bryant Hall, and that said order should remain in full force and effect, ordered and adjudged that the order of the Clerk of Superior Court of Alamance County, bearing date 11 February, 1952, vacating his order of 16 July, 1951, be declared null and void; that the order of the Assistant Clerk of Superior Court of Orange County appointing Beatrice Hiatt Fagan and husband, Leo Frank Fagan, guardians of the person of James Bryant Hall, bearing date 28 November, 1951, be declared null and void; and that the order of the Clerk of Superior Court of Alamance County, bearing date 16 July, 1951, appointing Lacy Bryant Hall, Sr., guardian of the person of James Bryant Hall be declared valid and in full force and effect, and that Lacy Bryant Hall, Sr., be and he is adjudged to be the lawful guardian of the person of the infant James Bryant Hall.

"Appeal Entries: To the entry of the foregoing judgment, Beatrice Hiatt Fagan and husband, Leo Frank Fagan, object, and move that the same be set aside. Motion denied, and said parties except.

"To the foregoing judgment Beatrice Hiatt Fagan and husband, Leo Frank Fagan, except and give notice of appeal therefrom to the Supreme Court . . ." Pursuant thereto appeal is perfected, and error is assigned.

*Falk, Carruthers & Roth for petitioners, appellants.*
*Barnie P. Jones for respondent, appellee.*

WINBORNE, J. Exceptions to the judgment, and to the entry of it, assigned as error on this appeal, present for decision one question: Do the facts found by the judge below support the judgment? *Culbreth v. Britt Corp.,* 231 N.C. 76, 56 S.E. 2d 15, and cases there cited. See also *Duke v. Campbell,* 233 N.C. 262, 63 S.E. 2d 555, and cases cited.

While a similar factual situation does not seem to have been presented to this Court, we hold that in the light of pertinent statutes and decisions of this and other courts, and of general principles of law applicable thereto, the facts found by the judge do support the judgment, and that error is not made to appear.

Provision is made by statute in this State for the appointment of guardians for infants, and the clerks of Superior Courts within their respective counties have full power to appoint guardians in all cases of infants who reside in such county. G.S. 33-1. And the word "reside" as used in the statute relating to the appointment of guardians has been construed to mean the domicile of the infant. 25 Am. Jur. p. 22, Guardian and Ward, Sec. 25. 39 C.J.S. p. 21, Guardian and Ward, Sec. 10. Compare *Roanoke Rapids v. Patterson,* 184 N.C. 135, 113 S.E. 603; *Thayer v. Thayer,* 187 N.C. 573, 122 S.E. 307; *Owens v. Chaplin,* 228 N.C. 705, 47 S.E. 2d 12.

On the subject of Domicil, The Conflict of Laws, by Joseph H. Beale, Vol. 1, Chapter 2, declares that every person must have a domicile of origin; that this domicile comes into being as soon as the child becomes at birth an independent person; that this domicile is retained until it is changed in accordance with law; and that there can be no change of domicile without an intention to acquire the new dwelling as a home, or as it is often phrased, without *animus manendi.* Hence "an unemancipated infant, being *sui non juris,* cannot of his own volition select, acquire, or change his domicile." *Thayer v. Thayer, supra; Duke v. Johnston,* 211 N.C. 171, 189 S.E. 504; *In re Blalock,* 233 N.C. 493, 64 S.E. 2d 848; *Allman v. Register,* 233 N.C. 531, 64 S.E. 2d 861.

The father is the natural guardian of his child. *In re TenHoopen,* 202 N.C. 223, 162 S.E. 619. And a legitimate child, whose father is alive, takes at birth, and continues during minority, the domicile of his father, —following it as it changes. Upon the death of the father his domicile at death continues to be the domicile of his minor child until the domicile

In re Hall.

of such child is legally changed. Beale on The Conflict of Laws, Vol. 1, pp. 210 and 217. Domicil Secs. 30.1 and 36.2. *Thayer v. Thayer, supra.*

Moreover, in this State it is provided by statute, G.S. 33-3, that in case of the death of the father of an infant, the mother of such child, surviving the father, immediately becomes "the natural guardian of the child to the same extent and in the same manner, plight and condition as the father would be if living"; and that "the mother in such case shall have all the powers, rights and privileges, and be subject to all the duties and obligations of a natural guardian," but that "this shall not be construed as abridging the powers of the courts over minors and their estates and over the appointment of guardians."

And the text writers say that on the death of the father, the domicile of an infant follows that of its mother during her widowhood, and ordinarily may be changed by the mother in changing her own. It is also held that the domicile of an infant will not follow that of its mother after her remarriage, since by remarrying her domicile is again fixed by that of her husband. And "there is, however, authority to the effect that a widow does not, by remarrying, lose her power to change the domicile of her children by a former marriage," and that "she may change their domicile in the same manner as she might have done prior to her remarriage." 17 Am. Jur. 625-628. Domicil Sections 57, 62, 63. But see *Lamar v. Micou* (1884), 112 U.S. 452, 5 S. Ct. 221, 28 L. Ed. 751, rehearing denied, 114 U.S. 218, 5 S. Ct. 857, 29 L. Ed. 94.

In this case, *Lamar v. Micou,* this headnote epitomizes the opinion of the Court: "The widow of a citizen of one State does not, by remarrying again and taking the infant children of the first husband from that State to live with her at the home of the second husband in another State, change the domicile of the children."

However, the authorities seem to be agreed that on the death of both parents the domicile last derived from the parents, or either of them, continues to be the domicile of the infant, during minority, until it is legally changed. But that a guardian by nature may change the domicile of such infant. And within this rule, a grandfather or grandmother, when next of kin, is a guardian by nature, who may change the infant's domicile after the parents' death; and that "by taking up his residence with his grandfather, or, if the grandfather is dead, with his grandmother, the orphan may in that way acquire the domicile of the grandparent." In Beale on Conflict of Laws, Vol. 1, p. 222 Domicil Sec. 39.1, it is held that "When both parents of a minor child are dead, and no legal guardian of the person has been appointed, the grandparent, who takes the child to his home and actually stands *in loco parentis* to the child becomes the natural guardian, and the domicile of the grandparent thereupon becomes the domicile of the child . . ."

However, "it would seem that the doctrine of natural guardianship has never been extended to uncle or aunt when they stand as next of kin to the minor." 17 Am. Jur., 627, Domicil Sec. 64. See also *Lamar v. Micou, supra.*

Indeed, on the rehearing of the case, *Lamar v. Micou,* the opinion of the Court expressed in this headnote is pertinent to case in hand: "Infants having domicile in one State, who after the death of both parents take up their residence at the home of their paternal grandmother and next of kin in another State, acquire her domicile."

Furthermore, in the case of *In re Martin,* 185 N.C. 472, 117 S.E. 561, this Court in opinion by *Stacy, J.,* said: Domicile is a question of fact and intention. Hence to effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence at another place, or within another jurisdiction, coupled with an intention of making the last acquired residence a permanent home." See cases there cited. Also, *In re Finlayson,* 206 N.C. 362, 173 S.E. 902; *Owens v. Chaplin, supra.*

And, in keeping with this principle, and as a general rule, a student, although an adult, does not acquire a legal domicile at an educational institution where he resides with the ultimate intention of returning to his original home. 28 C.J.S. p. 28, Domicile 12 (g) 3.

In the light of these principles, and of the findings of fact that both parents of the infant James Bryant Hall are dead, that his grandparents, paternal and maternal, next of kin to him, reside in Alamance County, and that after the death of his mother, the father having predeceased her, he was taken to the home of his paternal grandparents in Alamance County, and resided with them, we hold that regardless of what theretofore may have been his domicile, such grandfather became, and is, his guardian by nature, and the domicile of his grandfather then became his domicile. Hence, the Clerk of Superior Court of Alamance County had jurisdiction of him at time the order of 16 July, 1951, appointing Lacy Bryant Hall, Sr., as his guardian was made. Therefore, the rulings of the judge below legally follow.

And it may be noted that it is provided by statute G.S. 33-6 that there may be separate appointments of guardian for the person and for the estate of an orphan.

The judgment below is
Affirmed.