338 So.2d 215 (1976)
The FLORIDA BOARD OF REGENTS OF the DEPARTMENT OF EDUCATION, DIVISION OF UNIVERSITIES, and Florida State University, a Division of the Board of Regents of the State of Florida, Appellants,
v.
John S. Harris, Appellee.
No. AA-46.
District Court of Appeal of Florida, First District.
July 13, 1976.
*216 Charles E. Miner, Jr., Gen. Counsel, Herbert D. Sikes, Tallahassee, for appellants.
O. Earl Black, Jr., Tallahassee, for appellee.
HODGES, JOHN G., Associate Judge.
Stripped of legalistic adornment, the appeal in this case exposes for initial Florida appellate cognition and resolve the precise and deceptively simple question of whether or not common law removal of disability capacitates a minor to establish the required residence for tuition-paying classification at our state universities. The question is important because, under present law, Florida students pay considerably smaller entrance fees than do those classified as non-state residents.
The trial court answered the limited query affirmatively. Cogent reasons impel us to a different opinion.
Material facts are not disputed. The litigating student, John G. Harris, unmarried, left New Jersey, where he was born on September 6, 1952, and reared by his parents, and came to Florida for the first time in September, 1970. He entered Florida State University during the school terms of 1970-71 and 1971-72, and worked during the summers, both in Florida and New Jersey. On March 30, 1972, when he was 19 years old, he filed a declaration of domicile and citizenship, under Section 222.17, Florida Statutes. Further demonstrating his intention to become a domiciliary of Florida, he registered to vote and established a bank account in Leon County, and also obtained a Florida driver's license.
The plaintiff applied for but was denied status as a Florida resident at F.S.U. for the terms of school commencing in September, 1973, January, 1974, and April, 1974, and was not qualified and accepted as a Florida student for tuition purposes until September, 1974.
A stipulation by the opposing parties that the plaintiff had met the requirements of emancipation by common law was fashioned from somewhat amorphous and desultory testimony given by him on deposition. In recording the factual composite on which our opinion is brought to bear, we shall assume but do not necessarily agree that the trial court was correct in giving judicial sanction to the stipulation and in establishing the time disabilities were removed as being at some date prior to September, 1972.
The events upon which the appeal was adjectively constructed began when the plaintiff, John Harris, filed his supplemental *217 complaint in the cause on September 10, 1975, against the Board of Regents and Florida State University for a declaration of his rights and a return of that part of the tuition which he had paid for the terms mentioned in excess of fees paid by Florida students for the same periods.
After hearing, the lower court granted the relief sought in the plaintiff's complaint, in findings not only that the disability of non-age of the plaintiff had been removed by common law emancipation sometime prior to September, 1972, but that he had shown an intent to remain in Florida as early as March 22, 1972. The Court further found that since September, 1973, Harris should have been qualified as a Florida student for tuition purposes and that the fees for out-of-state students should not have been exacted from him. Judgment was entered against the defendants for the total excess fees claimed, plus costs. This final judgment is the subject of our review.
A proper opinion in the case hinges upon a correct interpretation of the specific provisions of determinative Rule 7.6, Florida Board of Regents' Operating Manual, the validity of which has been clearly established in Weitzel v. State, Fla.App. (1st), 306 So.2d 188 (1975). The pivotal rule reads as follows:
"A. For the purpose of assessing registration fees, students shall be classified as Florida and non-Florida. A Florida student is a person who shall have resided and had his domicile in the State of Florida for at least twelve (12) months immediately preceding the first day of classes of the current term.
1. In applying this policy `student' shall mean a person admitted to the institution. If such person is a minor, it shall mean parents, parent, or legal guardian of his or her person.
2. The word `minor' shall mean a person who has not attained the age of 18 and whose disabilities of minority have not been removed by reason of marriage or by a court of competent jurisdiction.

3. The word `domicile' for fee-paying purposes shall denote a person's true, fixed, and permanent home and place of habitation. It is the place where he intends to remain, and to which he expects to return when he leaves without intending to establish a new domicile elsewhere." (Emphasis added)
It is quickly apparent from the plain language of the Rule that a duality of conditions must be met by one qualifying as a Florida student for fee-paying purposes. Domicile must not only be established but further evidenced by a durational residence of twelve months. Authority of the Regents to impose these specific prerequisites for Florida student designation was confirmed in Weitzel, supra, and, of course, is not contested.
We think that provisions of the rule are also unequivocal in pronouncing that emancipation from infant disability for the establishment of the required domicile may be accomplished only by reaching the age of majority, marriage, or order of a competent court.[1]
*218 In line with the sound and equable view that a state has power to define a resident for tuition purposes differently from a resident for other purposes, [Thompson v. Board of Regents of University of Nebraska, 187 Neb. 252, 188 N.W.2d 840 (1971); Arizona Board of Regents v. Harper, 108 Ariz. 223, 495 P.2d 453, 56 A.L.R.3d 627 (1972)], relevant decisions in other states and one Florida per curiam opinion clearly demonstrate that a state statute or rule which reasonably classifies students as residents or nonresidents for tuition-paying purposes at its educational institutions should be strictly construed and kept unfettered and free of any legislatively unintended exception or modification engrafted by judicial decision. [See Kirk v. Board of Regents of University of California, 273 Cal. App.2d 430, 78 Cal. Rptr. 260 (1969); Hancock v. Regents of University of Wisconsin, 61 Wis.2d 484, 213 N.W.2d 45 (1973); Pelletreau v. Savage, D.C., 381 F. Supp. 582; Potter v. Board of Regents of Division of Universities of Dept. of Ed., Fla.App. (1st), 311 So.2d 202 (1975).] Our attention has not been directed by the plaintiff to authoritative judicial persuasion to the contrary and our review of an unbroken line of decisions confirming strict construction of similar provisions has led us to none.
The language of the basic rule of the Regents is so definite and clear in its requirements that it simply cannot be reasonably interpreted to include emancipation at common law as a means of granting capacity to establish required domicile for student classification for fee paying purposes.[2]
The plaintiff has also argued throughout, however, and the lower court apparently agreed, that even without the fact of common law emancipation, the plaintiff should be considered to have established the required domicile and residence because Rule 7.6A.2 applies to a person who has not attained the age of 18 years; he further correctly says that on the date in question, September, 1972, he was 20 years of age and claims that in September, 1973, he had completed the twelve months durational residence requirement, thereby entitling him to the Florida resident classification as provided by law.
But, however semantically anomalous our holding that a 21 year old common law emancipated domiciliary of Florida, who has resided in the state for three years, is not a Florida resident for tuition purposes may appear to be, its equation with the singular chronological facts concerning plaintiff's majority and the prospective operation of the Florida law, which changed the age of majority from 21 to 18 years, should give full credence and understanding to what we believe to be the sound legal effect of our decision.
The basic rule, Rule 7.6 of the Florida Board of Regents' Operating Manual,[3] *219 was amended to conform to Section 743.07, Florida Statutes, which became effective on July 1, 1973, reducing in Florida the age of majority from 21 to 18 years.
Section 743.07(3) reads as follows:
"(3) This section shall operate prospectively and not retrospectively and shall not affect the rights and obligations existing prior to July 1, 1973." (Emphasis ours.)
Florida decisions have uniformly and without exception adhered to the prospective operation of the statute.
It is crystal clear, therefore, that the plaintiff was a minor, even though he was 20 years of age, and could not have been emancipated by attaining the age of majority until July 1, 1973. Prior to that date, he lacked legal capacity to establish a Florida domicile separate and apart from his parents. To establish a domicile, a person must have the legal capacity to do so. Beekman v. Beekman, 53 Fla. 858, 43 So. 923 (1907); Riley v. Holmer, supra, and an unemancipated minor cannot, of his own volition, select or change his domicile, Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694 (1929); also see 28 C.J.S. Domicile § 12 (1941); In re Hall's Guardianship, 235 N.C. 697, 71 S.E.2d 140, 32 A.L.R.2d 856 (1952). This being so, Harris could not have met the durational residence requirement of twelve months until July 1, 1974, two months prior to his registration at Florida State University for the 1974 term.
Our holding that the Regents' rule should be legally construed to mean what it says is comforting to the judicial conscience because we also believe it to be conceptually valid and consonant with practicality and good public policy. The rule is unambiguous and not subject to further interpretation or construction.
A contrary ruling would presage for those charged with classification an almost insuperable task of establishing and evaluating facts relating to disability removal by common law standards for each student who claims emancipation by that means. A laborious process with extruding uncertain and undesired results and complicated legal ramifications naturally involved in the chore could be expected.
We also envision that a holding for the plaintiff might promote temptation and mischief and place a premium on deception by those prospective young students from foreign states bent on escaping the higher tuition fees which the courts have invariably held to be valid under similar classification. During the years when a student is entering and attending college his plans for future residence are usually vague and uncertain and sometimes fanciful. Questionable reliance can be placed on any statement of his intent when he knows he will realize a substantial reduction in tuition by being classified as a bona fide resident.
A ruling for the plaintiff would permit one over the age of 18 to acquire the indicia of domicile and immediately be entitled to registration as a Florida student. It would also allow a 17 year old student to move to Florida and, upon reaching his 18th birthday, demand to be classified as a Florida resident for tuition fee purposes.
It seems to us that the rule, strictly applied, provides a reasonable, definite and practical way to discover which university students are genuine Florida residents entitled to the favored classification which is legitimately related to equalization between those who have contributed to the state's weal and its educational revenues through payment of taxes, and those who have not. As to contribution, the same reasoning would apply, of course, in the case of a student capacitated for adequate residence through the domicile of his parent or *220 guardian because the latter is the benefactor of the state in that instance.
The desideratum implicit in the reasons we have bracketed in our opinion is the final impellent toward our firm conclusion that the judgment of the Circuit Court should be and is, therefore,
Reversed.
BOYER, C.J., and SMITH, J., concur.
NOTES
[1] In view of Chapter 73-21, Laws of Florida, which removed disability of non-age for persons 18 and older, the procedure in Section 62.011, Florida Statutes, for general removal of disability no longer obtains, which means that, at the present time, in order to become a Florida student for fee paying purposes, the student must be married or at least 18 years of age and a domiciliary who has resided in Florida for at least twelve months after attaining his or her majority.
[2] What legal effect, if any, statutory provisions with respect to removal of disability of non-age persons may have upon common law emancipation generally or what appears to be some conflict between decisions of the Supreme Court of Florida and the District Courts of Appeal as to whether statutory provisions for non-age disability removal are exclusive for other purposes, such as entitlement to wages, exclusion of property and wages from claims of creditors, obtaining licenses, paying taxes, etc., [See Ison v. Florida Sanitarium and Benevolent Asso., Fla. App. (4th), 302 So.2d 200 (1974), and cases cited therein; Owen v. Owen, Fla.App. (1st), 234 So.2d 165 (1970); Meehan v. Meehan, Fla.App. (2d), 133 So.2d 776 (1961); Jackson v. Citizens' Bank & Trust Co., 53 Fla. 265, 44 So. 516 (1907); Riley v. Holmer, 100 Fla. 938, 131 So. 330 (1930); Meehan holds that emancipation of a minor in Florida was unknown to the common law] are not relevant to our holding and we, of course, venture no opinion in that regard in the present milieu of this case.
[3] Rule 7.6, Florida Board of Regents' Operating Manual (now Rule 6c-7.05, Florida Administrative Code), was amended, on June 5, 1973, reducing the age of majority to 18 years to comply with the provisions of Chapter 73-21, Laws of Florida, which became effective, as did Section 1.01(14), Florida Statutes, on July 1, 1973.