Raymond S. Thompson, III, appellee, v. Board of
Regents of the University of Nebraska, a body
politic and corporate, appellant.
188 N. W. 2d 840

Filed July 16, 1971.    No. 37931.

Cline, Williams, Wright, Johnson & Oldfather and Kevin Colleran, for appellant.

Healey, Healey, Brown & Burchard, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The basic questions involved here are: (1) Whether it is constitutionally permissible for the State of Nebraska to charge a higher college tuition fee to nonresidents, and (2) whether it is constitutionally permissible to *require* 4 months *continuous* residence independent of attendance at an institution of learning in this state.

Section 85-502, R. R. S. 1943, in pertinent part provides as follows: "A person shall not be deemed to have established a domicile in this state, for the purpose of sections 85-501 to 85-504, unless:

"(1) Such person is of legal age and shall have actually resided in this state continuously for four months with the intention of making this state his or her permanent residence. * * *

*"No such person shall be deemed to have established a residence in this state during the time of attendance at such state institution as a student, nor while in attendance at any institution of learning in this state,* * * *."* (Emphasis supplied.)

The district court held the last (italicized) sentence of section 85-502, R. R. S. 1943, unconstitutional and severable from the other sections of the statute, thus permitting 4 months of student attendance and residence to satisfy the requirements of the statute. We hold the entire statute constitutional and reverse the judgment of the district court.

At the outset, it is important that we narrow the issues in this case. Since the district court's decision, the United State Supreme Court has affirmed the three-judge federal court decision in Starns v. Malkerson, No. 4-70 Civ. 26 (unpublished) (D. Minn., Sept. 22, 1970), affirmed without opinion, 401 U. S. 985, 91 S. Ct. 1231, 28 L. Ed. 2d 527 (1971). Starns is close to the problem we have here, and as we shall see, is controlling of our holding herein. It now appears, from the briefs and oral argument, that the parties are in agreement a state may constitutionally charge a nonresident a higher tuition rate than that charged a resident. It further appears as undisputed that an original durational residency requirement to *qualify* as a resident for tuition purposes is constitutional. Starns v. Malkerson, *supra;* Kirk v. Board of Regents of University of California, 273 Cal. App. 2d 430, 78 Cal. Rptr. 260 (1969), appeal dismissed, 396 U. S. 554, 90 S. Ct. 754, 24 L. Ed. 2d 746; Landwehr v. Regents of University of Colorado, 156 Colo. 1, 396 P. 2d 451; *Shapiro v. Thompson, 394 U. S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600;* Dandridge v. Williams, 397 U. S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491.

Nevertheless, the impact of Shapiro must be briefly examined. In it are the germinal seeds of this litigation. The limit of its reach illumines the path of our decision. Shapiro held that a state residency requirement for welfare payments penalized a fundamental constitutional right to interstate travel and that such a classification was not justified by any *compelling* state interest. Foreshadowing the questions raised in this case, in a footnote to Shapiro, the court said: "We imply no view of the valid-

ity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." Answering this same question (Shapiro's impact) the Starns decision, as affirmed by the United States Supreme Court said: "For the reasons above, we conclude that this is not a case of an infringement of a fundamental right and thus the exacting standards of the compelling state interest test have no application. Unlike *Shapiro,* we find the *one-year durational residence requirement challenged here* does not constitute a penalty upon the exercise of the constitutional right of interstate travel and thus the regulations constitutionally should be tested under the traditional equal protection standards." (Emphasis supplied.)

This holding is directly supported in the cases of Kirk v. Board of Regents of University of California, *supra;* Landwehr v. Regents of University of Colorado, *supra;* Clarke v. Redeker, 259 F. Supp. 117 (S. D. Iowa, 1966), affirmed, 406 F. 2d 883 (8th Cir., 1969), cert. denied 396 U. S. 862, 90 S. Ct. 135, 24 L. Ed. 2d 115; American Commuters Assn., Inc. v. Levitt, 279 F. Supp. 40 (S.D.N.Y., 1967), affirmed, 405 F. 2d 1148 (2d Cir., 1969).

At this point it is clear that: (1) The state has the power to classify students on the basis of residency for the purpose of charging tuition, and (2) to enforce such a classification a state has the power to define a resident for purposes of tuition differently than a resident for other purposes.

The rigid requirements of the "Constitutional Right versus Compelling State Interest" test not being applicable, we narrow the problem to an examination of whether the Nebraska requirement of 4 months continuous residency independent of school attendance,

meets traditional equal protection standards. The test becomes, then, whether a reasonable basis for classification exists that is related to a legitimate objective of the state. Harper v. Virginia State Board of Elections, 383 U. S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369; Creigh v. Larson, 171 Neb. 317, 106 N. W. 2d 187.

Refined analysis and simplistic logic when applied to the practical impact of a particular classification produces many times an appearance of inequality and discrimination. This is especially true close to the borderlines. But the sharpness of the lines drawn does not create an irrationality of classification or an invidious discrimination. This is particularly true when the sword of legislative policy deals with broad problems of economics and social welfare.

Very recently (1970) in upholding a family maximum versus an ascertained need per individual welfare payment provision, the United State Supreme Court said in Dandridge v. Williams, *supra*, as follows: "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the *classification has some 'reasonable basis,'* it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78, 55 L. Ed. 369, 377, 31 S. Ct. 337. *'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical,* it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U. S. 61, 69-70, 57 L. Ed. 730, 734, 33 S. Ct. 441. *'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'* McGowan v. Maryland, 336 U. S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101." (Emphasis supplied.)

In classifying students for the purpose of charging tuition, the state had the legitimate objective of attempting to achieve a partial cost equalization between those persons who have, and those who have not, recently contributed to the state's economy through employment, tax payments, and expenditures within the state. Such an objective is clearly a "reasonable justification" for the discrimination in tuition. Landwehr v. Regents of University of Colorado, *supra;* Clarke v. Redeker, *supra;* Kirk v. Board of Regents of University of California, *supra;* Starns v. Malkerson, *supra;* American Commuters Assn., Inc. v. Levitt, *supra.*

Starns, recently affirmed by the United States Supreme Court, relies on Clarke v. Redeker, *supra,* a 1966 case, and quotes the holding there as follows: "Although there is no way for this Court to determine the degree to which the higher tuition charge equalizes the educational costs of residents and nonresidents, it appears to be a reasonable attempt to achieve a partial cost equalization. The regulation classifying students as resident or nonresident for tuition purposes is not arbitrary or unreasonable and bears a rational relation to Iowa's object and purpose of financing, operating and maintaining its educational institutions."

In Kirk v. Board of Regents of University of California, *supra,* again relied upon in the affirmed Starns case, the California court said: "This state has a valid interest in providing tuition-free education to those who have demonstrated by a year's residence a *bona fide intention of remaining here and who,* by reason of that education, will be prepared to make a greater contribution to the state's economy and future. Accordingly, we hold that the regulation classifying students as residents or nonresidents for tuition purposes *is not arbitrary or unreasonable and bears a rational limitation to California's objective* and purpose of financing, operating and maintaining its many publicly financed educational institutions of higher learning." (Emphasis supplied.)

An examination of the settled law and the authorities reveals a clear path to our decision. The federal and state courts have sustained full 1-year residency requirements for tuition purposes in Colorado, California, Iowa, New York, and Minnesota (Starns affirmed by the United States Supreme Court). Nebraska only requires 4 months of continuous residency independent of school attendance. Both aspects of the statute bear a reasonable relation to a legitimate state objective. They neither penalize nor infringe on a basic constitutional right. Since this is true, the Legislature may reasonably require that the bona fides of the residence be demonstrated independent of the equivocal nature of mere physical attendance by a nonresident at a school in the state. The requirement of 4 months is surely not so burdensome as to forever bar the establishment of residence for other purposes. In fact, it prohibits not at all the establishment of legal residence for other purposes, primarily a matter of intention. Putting it another way, if a state may adopt such a standard or classification, it may also adopt and require reasonable standards to ascertain and enforce the basic legitimate state purpose.

Most students coming to Nebraska soon before registration come here primarily to attend the university. See, Kirk v. Board of Regents of University of California, *supra;* Clarke v. Redeker, *supra;* Starns v. Malkerson, *supra.* Voting, physical presence, acquisition of housing, or payment of taxes may or may not be indicative of the establishment of a legal residence, which is primarily a question of intent. The acquisition of these various indicia, coupled with an actual residence requirement of 4 months in the state while not attending school, obviously comes much closer to proving the bona fides of intent. The Nebraska statute is reasonably designed to protect a legitimate state interest and to secure the bona fides of the claimed intent regarding the residence of a person coming from another state for

the avowed and immediate purpose of securing the educational facilities of this state and eschewing the facilities of the state of his prior residence.

It may be that the statutory standard is occasionally imprecise and imperfect in its application to the relatively unique circumstances of a particular case, such as is claimed for the plaintiff here. However, as we have seen, this cannot be used as the basis for striking down the tuition classification here. A state is not required by the equal protection clause to choose between attacking every aspect of a problem or making no effort at all. It is enough if the regulation has a rational basis and does not invidiously discriminate. Dandridge v. Williams, *supra*. The last sentence of section 85-502, R. R. S. 1943, and the whole statute in its entirety meet that test.

Finally, we do not think that section 85-502, R. R. S. 1943, deprives the plaintiff of due process of law. The Legislature had the power to act on the subject matter; the power was not exercised in an arbitrary, capricious, or unreasonably discriminatory manner; and the section, being definite, has a reasonable relationship to a proper legislative purpose, that is, to distribute more evenly the cost of operating and supporting the state educational institutions between residents and nonresidents attending those institutions. As such, the section is not in conflict with due process of law. Rein v. Johnson, 149 Neb. 67, 30 N. W. 2d 548 (1947), cert. denied, 335 U. S. 814, 69 S. Ct. 31, 93 L. Ed. 369 (1948); Kirk v. Board of Regents of University of California, *supra;* Starns v. Malkerson, *supra;* Clarke v. Redeker, *supra;* Dandridge v. Williams, *supra;* McGowan v. Maryland, 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393.

We therefore hold that section 85-502, R. R. S. 1943, is a valid exercise of legislative power to classify, does not infringe upon rights protected by Article I, section 1 or 3, of the Constitution of the State of Nebraska, or the

Fourteenth Amendment to the Constitution of the United States, and is valid and constitutional.

Various other contentions of plaintiff herein are tangential aspects of the fundamental attacks discussed in this opinion. We have examined all of these contentions and find them to be without merit.

The judgment is reversed and the cause remanded to the district court with directions to enter judgment accordingly.

REVERSED AND REMANDED.

McCOWN, J., dissenting.

The plaintiff, his wife, and children have been bona fide residents of, and domiciled in, Nebraska since September 5, 1967. Those facts are undisputed. It is conceded that a state may charge a nonresident a higher tuition fee than that charged a resident; and that the state may also impose an original durational residence and domicile requirement of at least a year upon those persons coming into the state from other places. Virtually all of the cases cited in the majority opinion support those two undisputed propositions.

The critical part of the statute, which is not fully quoted in the majority opinion, provides: "No person shall be deemed to have established a residence in this state during the time of attendance at such state institution as a student, nor while in attendance at any institution of learning in this state, except in the case of a minor who qualifies as provided in this section."

There is no rational or reasonable basis on which an individual who has been a bona fide resident of and domiciled in this state for the initial time period required by statute, should be denied the right to prove that fact simply because he was in attendance at "any institution of learning in this state," whatever that term connotes. The discrimination is compounded when minors, emancipated and unemancipated, are excepted. The applicable principles are set out in Carrington v. Rash, 380 U. S. 89, 85 S. Ct. 775, 13 L. Ed. 2d 675. In that

case, the Supreme Court overthrew a Texas constitutional provision prohibiting any member of the armed forces of the United States from acquiring a voting residence in the State of Texas so long as he remained in service, even though he might have fulfilled the initial residence requirements applicable to others. There is surely no more justification for arbitrary discrimination against students than against persons in military service, nor is there any more rational basis for it. As applied to a tuition case of this kind, see Newman v. Graham, 82 Idaho 90, 349 P. 2d 716, 83 A. L. R. 2d 492.

The 1971 Legislature recognized the fact that there was no justifiable or reasonable basis for such an arbitrary and invidious discrimination and completely amended section 85-502, R. R. S. 1943, and repealed the former section. L.B. 408 of the 1971 Legislative Session completely removed that part of the statute quoted above and found unconstitutional by the district court; changed the initial residence requirement from four months to one year; completely redefined classifications; and set specific, complete, and objective requirements for proof of residence and domicile. That statute represents a thorough, rational, and reasonable approach to the problems involved.

The judgment of the district court was eminently correct and should have been affirmed.