Fox v. Trustees

MARTIN FOX AND EDWARD EZRAILSON, PETITIONERS v.
TRUSTEES OF THE CONSOLIDATED UNIVERSITY OF NORTH
CAROLINA; WILLIAM C. FRIDAY, PRESIDENT OF THE CONSOLI-
DATED UNIVERSITY OF NORTH CAROLINA; FEREBEE TAYLOR, CHAN-
CELLOR OF THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL;
CHRISTOPHER C. FORDHAM III, DEAN OF THE SCHOOL OF MEDICINE
OF THE UNIVERSITY OF NORTH CAROLINA; AND THE COMMITTEE
ON ADMISSIONS OF THE SCHOOL OF MEDICINE OF THE
UNIVERSITY OF NORTH CAROLINA, RESPONDENTS

No. 7210SC468

(Filed 30 August 1972)

Colleges and Universities; Constitutional Law § 20— in-state residence sta-
tus — admission purposes — constitutionality of statute and regulations

Statute and regulations which require that in-state resident status
for the purpose of admission to a State-supported institution of higher
education be accorded only to those who are domiciliaries of North
Carolina and who have been so domiciled without being enrolled in
an institution of higher education for at least twelve months preced-
ing the date of first enrollment or re-enrollment at such an institu-
tion, *held* not to deny student citizens originally from other states
their right to equal educational opportunities, and not to violate the
constitutional right to travel freely from one state to another. G.S.
116-143.1(b).

APPEAL by petitoners, Martin Fox and Edward Ezrailson,
from *Canaday, Judge,* 21 February 1972 Session of Superior
Court held in WAKE County.

This is a civil action wherein petitioners seek injunctive
and declaratory relief from application of "the Twelve Month
Rule, as set forth in *N.C.G.S.* 116-143.1(b) and as applied to
admissions standards by order of the Board of Trustees of the
Consolidated University of North Carolina. . . ."

The matter was heard by Judge Canaday on stipulated
facts which are summarized as follows:

Petitioners, Martin Fox and Edward Ezrailson, have reg-
istered to vote in North Carolina, are enrolled on their respec-
tive counties' tax rolls, possess North Carolina drivers' licenses
and automobile registration and are married to women who
will have been living in North Carolina, not as students, for
twelve months next preceding the commencement of the 1972-73
academic year.

During their residence in North Carolina, there has never
been a consecutive twelve month period in which petitioners

have not been enrolled in institutions of higher education in the State of North Carolina.

Petitioners have applied for admission to the School of Medicine of the University of North Carolina at Chapel Hill. Their applications are under consideration by the Committee on Admissions of the School of Medicine.

The regulation of the Board of Trustees of the University of North Carolina determining residency status for admissions purposes contains the same language as G.S. 116-143.1(b). Pursuant to this statute and the regulations, to qualify as an in-state resident, one must have resided in North Carolina for twelve consecutive months. Time spent in North Carolina while a student at an institution of higher learning is not counted toward satisfying this twelve month requirement.

The Board of Trustees has adopted a regulation limiting the number of nonresidents who may be admitted to the first year class of the School of Medicine to fifteen (15) percent of the entire first year class.

The trial judge made findings of fact substantially the same as stipulated by the parties and made the following conclusions:

"1. That neither of the Petitioners has been a legal resident and maintained his domicile for twlve continuous months in North Carolina prior to the date of first enrollment or re-enrollment in an institution of higher learning located in this State.

2. That in order to qualify for admission to the 1972-73 freshmen class of the University of North Carolina School of Medicine as a resident of this State, the applicant must have maintained his domicile in this State for twelve continuous months prior to the date of admission and time spent while in attendance at an institution of higher learning located in this State may not be counted as a part of the twelve month period.

3. That G.S. 116-143.1(a) and (b) are constitutional as applied to the Petitioners."

From a judgment denying the injunctive and declaratory relief prayed for, petitioners appealed.

*Karla Harbin Fox for petitioner appellants.*

*Attorney General Robert Morgan and Deputy Attorney General Andrew A. Vanore, Jr., for respondent appellees.*

HEDRICK, Judge.

The following regulations of the Board of Trustees of the University of North Carolina are based on G.S. 116-143.1(a) and (b) and they determine the status of residency of students for both admission and tuition purposes.

"(a) A nonresident shall be any person not qualifying for in-state tuition as hereinafter defined. (b) To qualify for in-state tuition, a legal resident must have maintained his domicile in North Carolina for at least the 12 months next preceding the date of first enrollment or re-enrollment in an institution of higher education in this State. Student status in an institution of higher learning in this State shall not constitute eligibility for residence to qualify said student for in-state tuition."

Petitioners contend that "the University of North Carolina residency requirements deny equal protection of the laws to student citizens originally from other states," in that the statute and regulations based thereon as applied to admissions quotas ". . . create an irrebutable presumption that, as long as a person originally coming from another state remains in North Carolina as a student at an institution of higher learning, he can never become a North Carolina resident for purposes of admission to the University of North Carolina." This contention is without merit.

In the recent cases of *Glusman v. Board of Trustees* and *Lamb v. Board of Trustees,* 281 N.C. 629, 190 S.E. 2d 213 (1972), the North Carolina Supreme Court considered a similar attack on regulations governing the determination of residency status for tuition purposes and found the challenges to the constitutionality of those regulations to be without merit. The Court recognized that since these challenged regulations " . . . do not relate to basic constitutional rights, the regulations are to be tested by less stringent traditional equal-protection standards." It thus becomes necessary for this Court to determine whether the challenged statute and regulations " . . . attain a

minimum (undefined and undefinable) level of RATIONALITY."
(Emphasis ours.) *Glusman v. Board of Trustees and Lamb v.
Board of Trustees, supra; Dandridge v. Williams,* 397 U.S.
471, 25 L.Ed. 2d 491, 90 S.Ct. 1153 (1970). We hold that they
do.

In the *Glusman* and *Lamb* cases, *supra,* Chief Justice Bob-
bitt, writing for the majority of the Court, stated at p. 638:

> "In the establishment and operation of its institutions of
> higher education, North Carolina's obligation and primary
> purpose is to provide opportunities to citizens of this
> state. . . . Indeed, in view of present crowded conditions,
> only a limited number of persons domiciled in other states
> may be enrolled in our institutions of higher education."

The question thus becomes whether it is reasonable for
the State to require that one desiring in-state resident status
for purposes of admission, be a domiciliary of North Carolina
and be so domiciled while not in attendance at an institution of
higher education for a consecutive twelve month period next
preceding the date of first enrollment or re-enrollment in an
institution of higher education in this State.

We hold that such requirement is reasonable. The object
is to assure that students who benefit from the operation of
the State's University are in fact North Carolina citizens. The
General Assembly and the Board of Trustees have concluded
that domicile alone will not suffice for the determination of
in-state resident status. In *Glusman* and *Lamb, supra,* Chief
Justice Bobbitt states:

> "The . . . nonattendance requirement adds objectivity
> and certainty to the requirement of domicile. It is a cer-
> tainty not obtained by placing an unreasonable burden
> on students. Petitioners were not barred by respondent's
> regulations from becoming domiciliaries of North Carolina."

To gain resident status, it is only necessary that petitioners
maintain their domicile in North Carolina for twelve consecu-
tive months while not enrolled in an institution of higher
learning. In view of the legitimate State objective in providing
ample educational opportunities for citizens of North Carolina,
the challenged regulations and statute are clearly reasonable.
*Glusman v. Board of Trustees* and *Lamb v. Board of Trustees,*

---

Fox v. Trustees

---

*supra; Landwehr v. Regents of University of Colorado,* 156 Colo. 1, 396 P. 2d 451 (1964) ; *Thompson v. Board of Regents of University of Neb.,* 187 Neb. 252, 188 N.W. 2d 840 (1971).

Petitioners also contend that the:

"North Carolina one-year nonresidence requirement creates a chilling effect on the right to travel because it discourages out-of-state potential students from establishing their domicile in North Carolina."

In support of this argument, petitioners rely on the case of *Shapiro v. Thompson,* 394 U.S. 618, 22 L.Ed. 2d 600, 89 S.Ct. 1322 (1969) in which "the United States Supreme Court relied on this right to travel in invalidating regulations requiring persons to be state residents for a year before they could become eligible for public assistance."

The case of *Shapiro v. Thompson, supra,* is factually and legally distinguishable in that when the durational residency requirement was applied to the right to receive public assistance it infringed the fundamental right to travel. Thus, the statute there condemned was subjected to a more stringent test of equal protection—whether it was necessary to promote a COMPELLING STATE INTEREST. One's right to in-state resident status for admissions purposes is quite different from his basic constitutional right to travel freely from one state to another. Since they do not affect fundamental constitutional rights, the statute and regulations are subject only to the less exacting rationality test. Clearly they satisfy that test.

Petitioners also contend that "the University of North Carolina residency requirements deny student citizens originally from other states their right to equal educational opportunity." This contention is also without merit.

In establishing and operating its institutions of higher learning, the state's duty and primary purpose is to provide opportunities to citizens of North Carolina. Chief Justice Bobbitt stated in *Glusman v. Board of Trustees* and *Lamb v. Board of Trustees, supra,* "The State has no obligation to provide educational opportunities to noncitizens."

Thus, petitioners have not been denied any right to equal educational opportunities. Their applications for admission to the School of Medicine will be considered equally with the

applications of other nonresidents. Should petitioners desire to apply as residents of North Carolina, it will first be necessary for them to satisfy the challenged statute and regulations of the Board of Trustees of the University of North Carolina.

We hold that the trial judge was correct in concluding that G.S. 116-143.1(b) as applied to these petitioners is constitutional. The judgment appealed from is

Affirmed.

Judges BROCK and MORRIS concur.