MARY ELIZABETH ALFORD, ADMINISTRATRIX OF THE ESTATE OF CHARLES S. ALFORD, JR., DECEASED v. TEXTILE INSURANCE COMPANY, A CORPORATION.

(Filed 16 April, 1958)

**1. Constitutional Laws § 17: Contracts § 1—**

Freedom to contract is both a personal and a property right within the protection of the Constitution, and although the General Assembly may impose restraints thereon for the public good, freedom of contract is the general rule and restraint the exception.

**2. Insurance § 48—**

Provision in a liability policy that insurer might negotiate and settle any claim or suit was not proscribed or rendered void under the 1947 statute, G.S. 20-227; further, the 1953 act, G.S. 20-279.21, does not indicate that prior to that date liability insurers were prohibited from settling claims.

**3. Same—**

A liability insurance carrier may settle part of multiple claims arising from the negligence of its insured, even though such settlements result in preference by exhausting the fund to which an injured party whose claim has not been settled might otherwise look for payment, provided the insurer acts in good faith and not arbitrarily, and the burden is upon a claimant whose claim is not paid in full because of prior payments made by insurer in settlements of other claims, to allege and prove bad faith on the part of insurer.

**4. Same—**

A liability insurance carrier is liable for interest for that amount of the recovery which is within the limits of liability of the policy from the date the judgment is rendered against insured until payment of its liability by insurer.

**5. Costs § 2—**

Where plaintiff recovers a part of the claim asserted in the action, the costs should be taxed against defendant.

PARKER, J., dissents.

APPEAL by plaintiff from *Stevens, J.,* November 1957 Term of LENOIR.

Plaintiff seeks to recover $5,000 with interest from 10 October 1955. Her claim has as its base a judgment obtained by plaintiff against Melvert Washington at the October 1955 Term of Lenoir Superior Court. See *Alford v. Washington,* 244 N.C. 132, 92 S.E. 2d 788, for background for the judgment. The parties waived jury trial and submitted the questions in dispute to the court upon an agreed statement of facts.

Briefly, the facts agreed upon are: On 14 June 1952 an automobile owned by Melvert Washington ran into an automobile operated by George Edward Cauley. The collision was caused by Washington's

negligence. Cauley's automobile was thrown against and broke an electric light pole and the wires suspended therefrom. There were eight people in the Cauley vehicle. Plaintiff's intestate was electrocuted in his attempt to rescue the occupants of the Cauley vehicle from the perilous position created by Washington's negligence. The policy issued by defendant on Washington's automobile obligated it, subject to the limits therein set out, to pay on behalf of its insured all sums which the insured was legally obligated to pay as damages for bodily injuries or death resulting from the operation of the insured's motor vehicle. The limits of liability set out in the policy were $5,000 for each person and $10,000 for each accident. Each of the occupants of the Cauley automobile sustained personal injuries resulting from the negligence of defendant's insured. Defendant made payments in settlement of the occupants' claims on dates and in amounts as follows: George W. Cauley, 8 July 1952, $475; J. B. Cauley, Jr., 29 July 1952, $400; Edmund Watson, 29 July 1952, $150; Allen T. Cauley, 29 July 1952, $300; J. B. Cauley, Sr., 29 July 1952, $2,500. Negotiations for settlement of the claim of another occupant, Sally B. Cauley, were begun shortly after 14 June 1952, but settlement was deferred pending receipt of complete medical reports, and was consummated 4 December 1952 by the payment of $3,000. The record does not disclose what disposition, if any, has been made of the claims of the other two occupants of the car. The total amount paid by defendant to the occupants of the Cauley automobile in settlement of their claims for personal injuries resulting from the negligence of its insured amounted to $6,825. Releases from liability in favor of Melvert Washington were obtained in consideration of said payments. On 18 September 1952 plaintiff brought her action against Washington for damages for the wrongful death of her intestate. Judgment was rendered in that action in favor of plaintiff and against defendant's insured at the October 10, 1955 Term of Lenoir Superior Court. Damages in the sum of $25,000 were assessed. Defendant appealed. The judgment was affirmed in an opinion filed 23 May 1956, *Alford v. Washington, supra.* On 21 June 1956 defendant paid the clerk of the Superior Court $3,175 to be applied as credit on that judgment. In addition it paid to the clerk the costs in the case of *Alford, Administratrix v. Washington.* The remaining portion is unsatisfied. The amount paid by defendant to the occupants of the Cauley car plus the amount paid to the clerk of the Superior Court for credit on plaintiff's judgment aggregate $10,000, the limit of liability fixed in the policy for each accident. The $3,175 paid by defendant to the clerk for credit on plaintiff's judgment was subsequently paid to her without prejudice to her right now asserted.

Upon the facts agreed, the court adjudged that plaintiff recover of defendant the sum of $3,175 with interest from 10 October 1955 to

21 June 1956 to be credited with the said sum of $3,175 paid by defendant to the clerk of the Superior Court of Lenoir County on 21 June 1956; and that said sum, when so paid, should be in full and complete discharge of defendant's liability under its policy. It taxed the costs of the action against plaintiff. She excepted and appealed.

*Jones, Reed & Griffin for plaintiff appellant.*
*White & Aycock for defendant appellee.*

RODMAN, J. Plaintiff predicates her right to recover the sum of $5,000 instead of the $3,175 paid into court on the theory that she was a beneficiary of the insurance policy issued by defendant; that the Legislature had prescribed the form of liability policies which might be issued, and the forms so prescribed did not, as she puts it, "vest in the insurance carrier the arbitrary and *ex parte* right to make settlement for personal injury with one or more of the persons injured in one accident, to the prejudice of another injured in the same accident, and that such settlements as are made by a liability carrier, are at its own risk."

The statute relating to automobile liability insurance in effect when the policy here sued on was issued is G.S. 20-227.

The policy issued by defendant to Washington provides: "Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; *but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.*" (Emphasis supplied.) Coverage A provides for bodily injury liability and coverage B for property damage liability.

The case therefore presents these questions: Is the policy provision which authorizes the company to make settlement void? If not, who had the burden of establishing arbitrary action by the insurance company in making settlement with others injured by the insured's negligence? Plaintiff asserts that the 1953 Act redefining "motor vehicle liability policy," (G.S. 20-279.21), which specifically authorizes insurance companies to insert in their policies a provision according them the right to settle claims with a deduction from the total of contract liability, if made in good faith, is clear indication that until 1953 insurance companies had no right to make settlements with some of numerous claimants when the effect thereof would be to reduce the amount which an injured person could recover under the policy.

We do not agree with the contention that the 1953 Act which con-

tains a provision expressly authorizing insurance companies to make settlement with claimants is any indication that prior to that date liability insurers were prohibited from settling with some of several claimants for the protection of their insured.

If the quoted policy provision is prohibited, it must be done by inference. There is no express language to that effect.

In an examination of the 1947 Act (G.S. 20-227) to ascertain if the quoted policy provision authorizing the insurer to make settlement was prohibited, we must bear in mind the fundamental rights of free men to contract. As said by *Walker, J.,* in *Stephens v. Hicks,* 156 N.C. 239, 72 S.E. 313; "Parties are entitled to contract according to their free will. They make contracts for themselves and not by legislative compulsion. The freedom of the right to contract has been universally considered as guaranteed to every citizen."

"The privilege of contracting is both a liberty and a property right. *Furniture Co. v. Armour,* 345 Ill. 160. The right to contract is recognized as being within the protection of the Fifth and Fourteenth Amendments to the Constitution of the United States (citing authorities); and protected by state constitutions. 'It has been held that the right to make contracts is embraced in the conception of liberty as guaranteed by the Constitution.' . . . 'Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquisition of property.'" *Morris v. Holshouser,* 220 N.C. 293, 17 S.E. 2d 115; 11 Am. Jur. 1153. The Legislature has the power to impose reasonable restrictions on the right to contract when the restrictions imposed are conducive to public good. As said by Mr. Justice Butler in *Advance-Rumley Thresher Co. v. Jackson,* 287 U.S. 283, 77 L ed 306, 53 S Ct. 133, 87 ALR 285: "But freedom of contract is the general rule and restraint the exception. The exercise of legislative authority to abridge it can be justified only by the existence of exceptional circumstances."

With these general principles in mind we look at the 1947 statute (G.S. 20-227). It is important to recall that one was not required to have liability insurance in order to operate an automobile. That was a matter of choice with the individual; and by far the greater proportion of those who purchased liability insurance did so for their protection. True, if the owner of an automobile negligently injured another and was unable to respond in damages to the extent of $5,000, his right to operate in the future could be suspended. But such operator could have his right to operate restored by filing with the Commissioner of Motor Vehicles a policy in the form prescribed by G.S. 20-227, or by filing with the Commissioner proof that a satisfactory bond had

been given, or by making an adequate deposit of cash or securities, or by filing a self-insurance certificate, G.S. 20-252.

The statute required an explicit description of the motor vehicle covered by the policy and protection for all persons using the motor vehicle with the consent of the owner. It was mandatory that the policy "insure the insured or other person against loss from any liability imposed by law for damages . . . because of bodily injury to or death of any person . . . subject to a limit exclusive of interest and costs, with respect to each motor vehicle, of five thousand dollars because of bodily injury to or death of one person in any one accident, and subject to the limit for one person, to the limit of ten thousand dollars because of bodily injury to or death of two or more persons in any one accident, and to a limit of one thousand dollars because of injury to or destruction of property of others in any one accident."

"Every policy shall be subject to the following provisions which need not be contained therein: (a) The liability of any insurance carrier to the insured under a policy becomes absolute when loss or damage covered by the policy occurs, and the satisfaction by the insured of a judgment for the loss or damage shall not be a condition precedent to the right or duty of the carrier to make payment on account of the loss or damage. . . . (d) Upon the recovery of a judgment against any person for loss or damage if the person or the decedent he represents was at the accrual of the cause of action insured against the liability under the policy, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment."

It may be conceded that the Legislature intended to provide protection for those injured by the negligence of an operator of a motor vehicle; but certainly one cannot read the statute and say that protection was not likewise to be afforded the insured. The provisions quoted make it manifest that such protection was required.

By express language liability attaches to the insurer at the very moment the insured becomes liable. Insurer is not required to await the rendition and satisfaction of a judgment by the insured as a condition precedent to its duty to make payment on account of loss or damage. There is, we think, significance in the words loss or damage rather than payment of a judgment; and when a judgment is obtained, the creditor *shall be entitled* to have the insurance money applied to the satisfaction of the judgment. Certainly the Legislature never contemplated a race between claimants to see who should obtain the first judgment.

Here the liability to the parties with whom settlement was made is expressly stipulated. They have equality in right under the policy even if not equality in amount of claim under the policy. Suppose

instead of settling with these claimants without litigation insurer had required them to bring suit before making payment, and because of the refusal to compromise, they brought suit and obtained judgments in amounts either fixed by a jury or by consent. They would, we think, under the express language of the statute have a right to have their judgments paid even though they knew that plaintiff might subsequently bring a suit and might subsequently obtain a judgment against Washington and defendant.

Those injured by the negligence of the insured derive their right against the insurer from the insured and can assert no greater rights against the insurer than the insured could assert. *Peeler v. Casualty Co.*, 197 N.C. 286, 148 S.E. 261; *Sears v. Casualty Co.*, 220 N.C. 9, 16 S.E. 2d 419; 46 C.J.S. 112; 8 Appleman Ins. L. & P., sec. 4811; 5A Am. Jur. 117.

The law imposes on the insurer the duty of carrying out in good faith its contract of insurance. The policy provision giving the insurer the right to effectuate settlement was put in for the protection of the insured as well as the insurer. It is a matter of common knowledge that fair and reasonable settlements can generally be made at much less than the financial burden imposed in litigating claims. It is for this reason that courts have consistently held that an insurer owes a duty to its insured to act deligently and in good faith in effecting settlements within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy. Liability has been repeatedly imposed upon insurance companies because of their failure to act diligently and in good faith in effectuating settlements with claimants. As matters now stand, Washington has an unsatisfied judgment standing against him for something in excess of $21,000. Suppose the insurance carrier had not made settlement with the other claimants but had fought their claims to the bitter end, and as a result plaintiff had obtained the first judgment and had been paid the full amount of insurer's liability to any one person of $5,000; what assurance was there that Washington would not be confronted with judgments aggregating far more than the present amount of plaintiff's judgment against him. If the insurer had failed to make these settlements, and judgments for greater amounts had been obtained against its insured; it would, we think, be liable to Washington for such amounts as the judgments exceeded the amounts for which the insurer could have settled. *Lumber Co. v. Ins. Co.*, 173 N.C. 269, 91 S.E. 946; *State Automobile Ins. Co. v. York*, 104 F 2d 730; *Wilson v. Aetna Casualty & Surety Co.*, 76 A 2d 111; *Douglas v. United States Fidelity & G. Co.*, 127 A 708, 37 A.L. R. 1477; *Hall v. Prefered Accident Ins. Co.*, 204 F 2d 844, 40 A.L.R. 2d 162, and annotations; 45 C.J.S. 1069; 5A Am. Jur. 115. The liability so imposed on the insurer would not, we think, be affected or diminished

by the question of solvency or insolvency of its insured. *Southern Union Fire & Casualty Co. v. Norris,* 250 S.W. 2d 785; *Schwartz v. Norwich Union Indemnity Co.,* 250 N.W. 446.

It is not necessary in this case to determine whether the insurer is liable for mere negligent failure to settle or whether it is requisite to show good faith in failing to make settlement; nor is it necessary now to interpret the 1953 Act, G.S. 20-279.21, as relating to the bona fides of an insurer conducting negotiations and effecting settlements of claims made by the insurer. At the time this cause of action accrued, one who asserted arbitrary action on the part of the insurer had the burden of alleging and establishing the asserted bad faith. *Lumber Co. v. Ins. Co., supra.* Plaintiff has neither alleged nor offered proof of the assertion here made that the insurance company acted arbitrarily in making settlement.

When and how to settle claims arising under an automobile liability policy can readily become a problem with many sides. Particularly is this true when numerous persons are making claims against the insured. An article entitled "Preferential Settlement" which discusses many of these problems appears in 70 Harv. L. R. 27.

The courts which have been called upon to consider the question are in agreement that an insurer may settle part of multiple claims arising from the negligence of its insured, even though such settlements result in preference by exhausting the fund to which the injured party whose claim has not been settled might otherwise look for payment. *Bruyette v. Sandini,* 197 N.E. 29 (Mass.); *Bennett v. Conrady,* 305 P 2d 823 (Kan.); *Stolove v. Fidelity & Casualty Co.,* 282 N.Y.S. 263; *Bartlett v. Travelers' Ins. Co.,* 167 A 180 (Conn.); *Williams' Adm'x v. Lloyds of London,* 280 S.W. 2d 527 (Ky.); 46 C.J.S. 126. Nor may a court require the insurance company to pay the fund into its register for ratable distribution among claimants. *Turk v. Goldberg,* 109 A 732 (N.J.).

Since plaintiff has not alleged or offered to prove that the settlements made were not in fact made in good faith, and therefore a fraud on her rights, it follows that the payments had the effect of exhausting the fund to the extent of those payments; and the balance is the limit of defendant's liability. It is not controverted that this is $3,175. Defendant was obligated to pay that amount in October 1955 when judgment was rendered establishing the liability of its insurer. It elected not to pay the sum until June 1956. Plaintiff was therefore entitled to interest on that sum as adjudged by the court.

Plaintiff, having succeeded as to part of the claim which she asserted against the defendant, was entitled to judgment awarding her not only the interest but her costs. The judgment is erroneous to the extent that it taxes plaintiff with the costs. The cause is remanded to

the Superior Court of Lenoir County in order that the judgment may be reformed so as to tax defendant with the costs of the action.

Remanded.

PARKER, J., dissents.