MARGARET S. POWE v. A. G. ODELL, JR. AND ODELL ASSOCIATES, INC.

No. 88PA84

(Filed 4 December 1984)

1. Insurance § 110.1; Interest § 2; Judgments § 55— prejudgment interest— claims covered by liability insurance—constitutionality of statute

The statute providing for prejudgment interest on non-contract claims covered by liability insurance, G.S. 24-5, does not violate the equal protection provisions of the Fourteenth Amendment to the U. S. Constitution or Art. I, § 19 of the N. C. Constitution.

2. Appeal and Error § 3— review of constitutional questions

The Supreme Court will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the court below.

Justice MEYER dissenting.

Justices COPELAND and MITCHELL join in this dissenting opinion.

ON discretionary review, prior to determination by the Court of Appeals, of the order signed by *Allen, J.,* on 15 November 1983 in Superior Court, MECKLENBURG County.

Plaintiff seeks prejudgment interest on an award of damages for personal injuries which were sustained as the result of an automobile collision involving a vehicle owned and operated by defendants. After a jury trial, judgment was entered on 25 October 1983 awarding plaintiff $100,000 in damages, plus $432 in court costs. On the same date plaintiff filed a motion to amend the judgment to include prejudgment interest pursuant to N.C.G.S. 24-5, alleging that the omission of this interest had been a clerical error.[1] Plaintiff had not requested prejudgment interest in her pleadings, nor did she request that an issue concerning it be submitted to the jury. Following a hearing the trial court entered an order denying plaintiff's motion for prejudgment interest, holding that N.C.G.S. 24-5 violates the equal protection provisions of the constitutions of the United States and of North Carolina. From this order plaintiff requested discretionary review by this Court pursuant to N.C.G.S. 7A-31 (Cum. Supp. 1983). Plaintiff's petition was allowed 30 April 1984, and oral arguments on the case were heard 11 September 1984.

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by William E. Poe and Christian R. Troy, for plaintiff.*

*Boyle, Alexander, Hord and Smith, by B. Irvin Boyle, for defendants.*

*Henson, Henson & Bayliss, by Paul D. Coates, Perry C. Henson, and Perry C. Henson, Jr., for Samuel Ingham Tarble and ARA Services, Inc., amici curiae.*

MARTIN, Justice.

[1] The sole question properly before the Court for review is whether the trial court erred in holding that N.C.G.S. 24-5 vio-

---

1. On 27 October 1983, defendants' liability insurer, The Travelers Insurance Company, paid the sum of $100,432 to the Clerk of the Superior Court of Mecklenburg County in satisfaction of the judgment.

lates the equal protection clause of the fourteenth amendment to the Constitution of the United States and article I, section 19 of the Constitution of North Carolina. We hold that the trial court did err in holding that the statute violates these constitutional provisions.

N.C.G.S. 24-5 (Cum. Supp. 1983) provides as follows:

> All sums of money due by contract of any kind, excepting money due on penal bonds, shall bear interest, and when a jury shall render a verdict therefor they shall distinguish the principal from the sum allowed as interest; and the principal sum due on all such contracts shall bear interest from the time of rendering judgment thereon until it is paid and satisfied. The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract shall bear interest from the time the action is instituted until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly. The preceding sentence shall apply only to claims covered by liability insurance. The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract which are not covered by liability insurance shall bear interest from the time of the verdict until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly.

In determining whether a statute violates the equal protection clause of the fourteenth amendment to the United States Constitution or article I, section 19 of the North Carolina Constitution, we must decide whether the legislative classification in the statute could provide a reasonable means to a legitimate state objective. As this Court stated in *Glusman v. Trustees and Lamb v. Board of Trustees*, 281 N.C. 629, 638, 190 S.E. 2d 213, 219 (1972), *vacated on other grounds*, 412 U.S. 947 (1973):

> The traditional equal-protection test does not require the very best classification in the light of a legislative or regulatory purpose; it does require that such classification in relation to such purpose attain a minimum (undefined and undefinable) level of rationality. "In the area of economics and social welfare, a state does not violate the Equal Protection Clause merely because the classifications made by its

Powe v. Odell

laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L.Ed. 2d 491, 501-02, 90 S.Ct. 1153, 1161 (1970).

As long as a legislative classification in a statute concerning matters of economics or social welfare has a reasonable basis and is rationally related to a governmental objective which is permissible under the state and federal constitutions, this Court will defer to the wisdom of the legislature.

Defendants concede that the probable goals of N.C.G.S. 24-5 are legitimate state purposes. These include:

(a) to compensate a plaintiff for loss of the use value of a damage award or compensation for delay in payment;[2]

(b) to prevent unjust enrichment to a defendant for the use value of the money, and

(c) to promote settlement.[3]

However, defendants argue that N.C.G.S. 24-5 violates the principles of equal protection because the statute's classification of claims covered by liability insurance and claims not covered by liability insurance does not have any reasonable basis and therefore is not rationally related to the legitimate state purposes. Thus the instant controversy centers on the question whether the legislative classification of claims in N.C.G.S. 24-5 is rationally related to achievement of the statute's purposes.

2. This goal is in accord with the policy allowing compensation for delay in payment of awards for damages in eminent domain cases. *DeBruhl v. Highway Commission*, 247 N.C. 671, 102 S.E. 2d 229 (1958).

3. The insurance carrier has the right to settle any claim covered by the policy. N.C. Gen. Stat. § 20-279.21(f)(3) (1983). "The law imposes on the insurer the duty of carrying out in good faith its contract of insurance. The policy provision giving the insurer the right to effectuate settlement was put in for the protection of the insured as well as the insurer. It is a matter of common knowledge that fair and reasonable settlements can generally be made at much less than the financial burden imposed in litigating claims." *Alford v. Insurance Co.*, 248 N.C. 224, 229, 103 S.E. 2d 8, 12 (1958).

Under *Glusman,* we need only determine if the classification's relation to the objectives sought by the General Assembly attains a minimum level of rationality. As long as there exist reasonable facts on which the legislature could have relied in creating the classification, we will not interfere with the legislature's decision. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 66 L.Ed. 2d 659 (1981).

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L.Ed. 2d 393, 399 (1961).

Defendants contend that there is no rational reason why claims against self-insurers should not be subject to prejudgment interest to the same extent that claims covered by liability insurance are so subject. Defendants argue that the claim holders in both instances are similarly situated with respect to litigating claims and paying judgments and thus should not be treated differently. Either all defendants in non-contract actions should be required to pay prejudgment interest, or none should be.

In so arguing defendants overlook the fundamental differences between self-insurers and liability insurance companies. Self-insurers are basically concerned with the operation of their businesses, e.g., sales, manufacturing, utilities. The business of liability insurance companies is the receiving and investing of insurance premiums and the settling and payment of insurance claims. Self-insurers only incidentally settle claims; it is the business of liability carriers.

The General Assembly could have taken note that insurance companies have an incentive to delay litigation involving claims

they insure. This incentive stems from the fact that unlike self-insurers, insurance companies are required by statute to establish loss reserves, which are invested for profit until specific claims are paid off. *See* N.C. Gen. Stat. § 58-35.2 (1982). While self-insurers and other defendants can also delay trial of an action, they do not have the incentive to delay the time when claims must be paid in order to maximize the investment of legislatively mandated loss reserves. The legislature's recognition of this difference could have led it to attempt to curb some of the pretrial delay in non-contract cases handled by insurance companies by providing for prejudgment interest in such cases. Because the insurance company defending a non-contract claim would have to pay interest on the judgment from the time the suit is filed until judgment is paid, insurance companies would have an incentive not to delay trial but, instead, to speed up the process leading to settlement or trial.[4]

Providing for prejudgment interest on claims covered by liability insurance is thus a rational step to achieve the legitimate state goals enunciated above. "[T]hose challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the government decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 111, 59 L.Ed. 2d 171, 184 (1979). *Accord Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469, 66 L.Ed. 2d 659, 672. Defendants have failed to meet this burden.[5] Because there is a rational basis upon which the legislature could have classified defendants as it did in N.C.G.S. 24-5, we hold that this statute does not violate the equal protection clause of the fourteenth amendment to the United States Constitution or article I, section 19 of the Constitution of North Carolina.

Appellees in their brief attempt to raise the issue that the statute is unconstitutional as violating substantive due process rights under the fourteenth amendment to the Constitution of the

---

4. We note that Travelers, which apparently was responsible for payment of postjudgment interest, paid the $100,432 award of damages and costs only two days after judgment was entered.

5. *Cf.* Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1152 (1954) (most insurance policies unambiguously give the insurer the right to control defense of claims under the policy).

United States and article I, section 19 of the Constitution of North Carolina. They also argue that the statute is unconstitutional because it impermissibly impairs the obligation of the contract of insurance.

[2]   Neither of these issues was presented to or passed upon by the trial court. The trial court's order was based solely upon the finding that the statute is unconstitutional because it violates the requirements of equal protection of the law. It is a well settled rule of this Court that we will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the court below. *State v. Woods,* 307 N.C. 213, 297 S.E. 2d 574 (1982); *City of Durham v. Manson,* 285 N.C. 741, 208 S.E. 2d 662 (1974); *State v. Cumber,* 280 N.C. 127, 185 S.E. 2d 141 (1971); *Wilcox v. Highway Comm.,* 279 N.C. 185, 181 S.E. 2d 435 (1971). This is in accord with the decisions of the United States Supreme Court. *Irvine v. California,* 347 U.S. 128, 98 L.Ed. 561 (1954); *Edelman v. California,* 344 U.S. 357, 97 L.Ed. 387 (1953). While it is true that the question of the constitutionality of the statute based upon equal protection grounds was determined by the trial court, the two additional constitutional issues were not before the trial court. Nor did the defendants make cross-assignments of error. N.C.R. App. P. 10(d). Defendants raise these issues for the first time on appeal. Because they failed to ask the trial court to pass upon the issues, we must decline to do so now. *State v. Woods,* 307 N.C. 213, 297 S.E. 2d 574.

The order of the trial court is reversed and the case is remanded to Superior Court, Mecklenburg County, for proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MEYER dissenting.

I respectfully dissent from both the reasoning and the result reached in the majority opinion. In my view the majority has effectively abrogated its responsibility to ensure that our legislature refrains from enacting laws which arbitrarily and unfairly discriminate against classes of persons in violation of their constitutional rights to equal protection. While the majority's analysis may possess the attribute of simplicity, it is that very

simplicity which forms the foundation of its inherent weakness. Its reasoning can be easily summarized:

1. The statute at issue, N.C.G.S. § 24-5, involves regulation in the area of economics and social welfare; therefore a court's review is limited to whether "the classification's relation to the objectives sought by the General Assembly attains a minimum level of rationality."

2. There is a "fundamental" difference between liability insurance companies and self insurers: liability insurance companies are in the "business" of insurance; self insurers "only incidentally settle claims."

3. There is a legitimate State purpose in promoting settlement of cases.

4. Insurance companies "have an incentive to delay litigation involving claims they insure," because they are "required by statute to establish loss reserves, which are invested for profit until specific claims are paid off."

5. Therefore there is a rational relation between the classification, liability insurance companies, and the objective sought, to promote settlement.

A careful analysis of the above "reasoning" leads inexorably to the conclusion that the majority has discovered an *excuse* rather than a *rational basis* for this legislation.

It is true that our courts have traditionally deferred to legislative judgment in reviewing equal protection challenges involving statutes of an economic nature. *See, e.g., Glusman v. Trustees and Lamb v. Board of Trustees*, 281 N.C. 629, 190 S.E. 2d 213 (cited by the majority). The authority of the legislature to enact such statutes is not, however, unlimited and it is the duty of the reviewing court to determine whether the limits have been transgressed. The equal protection clauses of the United States Constitution and the North Carolina Constitution require that in making classifications such as the legislature has made in this case, no arbitrary distinction be drawn between similarly situated persons. *See, e.g., Cheek v. City of Charlotte*, 273 N.C. 293, 160 S.E. 2d 18 (1968). The test under the equal protection clauses, is whether the difference in treatment made by the law has a rea-

sonable basis in relation to the purpose and subject matter of the legislation. *Indemnity Co. v. Ingram, Comr. of Insurance,* 290 N.C. 457, 226 S.E. 2d 498 (1976); *Guthrie v. Taylor,* 279 N.C. 703, 185 S.E. 2d 193 (1971), *cert. denied,* 406 U.S. 920, 32 L.Ed. 2d 119 (1972). Thus, rationality and fairness may be said to provide the keystones to a constitutionally valid economic regulation. I find neither to be present in the statute under discussion. In my opinion, N.C.G.S. § 24-5 arbitrarily discriminates between similarly situated plaintiffs and similarly situated defendants, if not under the federal constitution, then certainly under the North Carolina Constitution. *Compare McGowan v. Maryland,* 366 U.S. 420, 6 L.Ed. 2d 393 (1961) with *Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18.

I find neither significant nor helpful the "fundamental" difference between liability insurance companies and self insurers observed by the majority. The question, of course, is whether this difference has a reasonable basis in relation to the goal of the legislature. In the present case, the fact that liability insurance companies are in the business of settling claims bears no relation whatsoever to the State's goal of promoting settlements.[1] Rather, it is the majority's position that the goal of promoting settlement might be somewhat enhanced because these insurance companies are *required by law* to establish loss reserves which could result in an incentive to delay litigation.[2]

In support of this tenuous conclusion, the majority explains that loss reserves are invested for profit. What the majority fails

1. Though not addressed by the majority opinion I would question whether insurance companies as a class (and not just auto insurance companies) are any better able to expedite claims and avoid litigation delays than many self insureds. It is not unusual for insurance companies to depend on private claims adjusting firms for the investigation and settlement of claims against their insureds. In many instances the very same adjusting firms are employed by self insurers. In such instances are the insurance companies any better equipped to expedite the claims than the self insureds? Likewise, is a small insurance company (or a large one with little business in the liability field) with a small claims department any better able to handle claims than the large claims, and legal departments of the giant corporation which is self insured?

2. Are insurance companies really different because they are required *by law* to establish reserves whereas giant corporations which are self insureds establish reserves because it is good business practice? Is this not a distinction without a difference?

to recognize is that as a practical matter in order to comply with N.C.G.S. § 58-35.2, insurance companies must transfer loss reserves from long-term accounts yielding high returns to short-term accounts yielding substantially lower returns. (The same with self insureds.) The more expedited the litigation, the sooner these funds can be returned to long-term accounts, in the event defendant prevails. (The same with self insureds.) It is therefore at best pure speculation that liability insurance companies will be motivated to delay litigation on this basis.

On the other hand, as the majority recognizes, self insurers and other defendants can and do delay litigation. I would point out that plaintiffs, too, delay litigation. In fact, it is frequently the plaintiff's decision to "hold out" for amounts in excess of insurance coverage, *amounts upon which prejudgment interest is presumably not due*,[3] that results in failure to settle and protracted litigation. I find it patently unfair that our laws penalize a discrete minority of insurers who, with no demonstrable certainty, are charged with purposefully delaying litigation for financial gain when others similarly situated can be, and frequently are, equally dilatory. That the law is arbitrary and unreasonable with respect to liability insurance companies is demonstrated by the fact that these companies are subject to the additional assessment of prejudgment interest while others similarly situated, for no apparent reason, are not.

Furthermore, the law unreasonably discriminates against defendants covered by liability insurance who will undoubtedly bear the burden of higher insurance rates to compensate for the additional cost of prejudgment interest.

The statute also clearly discriminates amongst similarly situated *plaintiffs*. The law excludes:

---

3. Under the statute prejudgment interest applies "only to *claims* covered by liability insurance." (Emphasis added.) I presume the majority would say that the "claim" refers to all damages sought and recovered and not just to that portion of the compensatory damages covered by insurance. Must the liability insurer pay prejudgment interest on the uninsured portion of the "claim," that is, the portion in excess of the policy limits? Must the individual defendant pay it? Or does prejudgment interest apply at all to the uninsured portion? These questions are left unanswered by the statute as are a number of others. For instance—does the term "claim covered by liability insurance" *include* claims under uninsured motorists coverage or suits defended by the carrier under a reservation of rights in a nonwaiver agreement?

(a) Self insurers (even though their claims may be handled by the adjusting departments of commercial insurers);

(b) Persons or corporations obtaining bonds executed by surety companies or bonds executed by two individual sureties each owning real estate within the state (N.C.G.S. § 20-279.24);

(c) Persons or corporations meeting the requirements of the Motor Vehicles Safety and Financial Responsibility Act of 1953, by depositing $60,000.00 in cash or securities (N.C.G.S. § 20-279.25);

(d) Persons or corporations in whose name more than 25 motor vehicles are registered, who qualify as self insurers under the provisions of N.C.G.S. § 20-279.33;

(e) Governmental bodies.

As a result of these exclusions, the law arbitrarily discriminates against the class of plaintiffs who are injured by the acts of a defendant who falls into one of the above categories. The converse, of course, is that the law favors those plaintiffs who are fortunate enough to be injured by the acts of a defendant who is covered by liability insurance.[4]

In my opinion, this aspect of the statutory classification results in the grant of "exclusive or separate emoluments or privileges" to certain plaintiffs in violation of our constitution. *See Lowe v. Tarble*, 312 N.C. 467, 323 S.E. 2d 19 (1984) (Meyer, J., dissenting) (holding to the contrary). In this regard, I would simply point out that this Court would not be so eager to dismiss the equal protection challenge had the pertinent part of N.C.G.S. § 24-5 been couched in the following language:

The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract shall bear interest from the time of the verdict until the

---

4. Indeed, if prejudgment interest is not recoverable on the uninsured portion of the compensatory damages award, does the statute not create three classes of plaintiffs—the unlucky ones who sue uninsured defendants, those luckier ones who sue defendants with minimum or low coverage and those even luckier ones who sue heavily insured defendants?

judgment is paid and satisfied EXCEPT AS TO ANY PLAINTIFF whose claim is covered· by liability insurance in which event that plaintiff is entitled to interest from the time the action is instituted until the judgment is paid.

Under this language the result would be no different than it stands now under the majority's holding, and in my view would be unsupportable as granting to one class of plaintiffs exclusive privilege.

In conclusion, N.C.G.S. § 24-5 is unconstitutionally discriminatory: its classification arbitrarily discriminates against liability insurance companies, their insureds and a large class of plaintiffs whose claims are brought against defendants who are not so insured. Moreover, it does not constitute a reasonable means by which to promote the expeditious disposition of non-contract claims. Accordingly, the statute violates the fundamental principles of equal protection. Though I believe the statute as it now stands is unconstitutional, I would find no objection if it applied to all non-contract claims without regard to insurance coverage.

I vote to affirm the order of the trial court denying plaintiff's motion for prejudgment interest.

Justices COPELAND and MITCHELL join in this dissenting opinion.