IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-169

Filed 17 December 2024

Onslow County, No. 19CVS2391

LUIS ORTEZ and THERESA BEDDARD ESTES, Individually and as Administratrix of the ESTATE OF DARREN DRAKE ESTES, Plaintiffs,

v.

PENN NATIONAL SECURITY INURANCE COMPANY, PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY and PAMELA A. TOKARZ, Defendants.

Appeal by defendant from judgment entered 19 July 2019 by Judge John E. Nobles, Jr. in Onslow County Superior Court. Heard in the Court of Appeals 14 August 2024.

> *White & Stradley, PLLC, by J. David Stradley and Nicole D. McNamara, for the plaintiff-appellee Ortez.*
>
> *Abrams & Abrams, PA, by Noah B. Abrams, for the plaintiff-appellee Estes.*
>
> *Kellum Law Firm, by John T. Briggs, for the plaintiff-appellee Estes.*
>
> *Goldberg Segalla, LLP, by David L. Brown and John I. Malone, Jr., for the defendant-appellant.*

TYSON, Judge.

Penn National Security Insurance Company ("Penn National") appeals from the trial court's order granting Luis Ortez's ("Ortez") motion for Rule 12(c) judgment on the pleadings. We reverse.

## I.   Background

Penn National Security Insurance Company ("Penn National") issued a commercial auto insurance policy ("policy"), No. AX9 0615893 to Kitchen and Lighting Designs Inc. ("employer") on 1 August 2017, for a policy period extending from 1 August 2017 to 1 August 2018.  The policy provided, *inter alia*, coverage as an "insured" for "[a]nyone else while using with [employer's] permission a covered 'auto' you own, hire or borrow . . . ."  The policy also contained an exclusion as an "insured", stating, "This insurance does not apply to any of the following . . . fellow employee." One week later, on 8 August 2017, Plaintiff Luis Ortez was driving the employer's insured vehicle, when due to Ortez's distracted driving, he was involved in an accident, which resulted in the death of fellow employee, Darren Drake Estes, a passenger in the employer's insured vehicle.

Penn National was notified of the accident by their employer, Kitchen & Lighting Designs, who informed Penn National it employed both Ortez and Estes. Employer also notified Penn National it had submitted Ortez's and Estes' claims to its workers' compensation carrier.

On 5 March 2018, Estes' wife, Theresa Beddard Estes, individually and as Administratrix of the Estate of Darren Drake Estes, filed a wrongful death suit against Passport Transportations, Inc.,  their driver, Zemo Fissaha, and Luis Ortez," in Craven County Superior Court ("Wrongful Death Lawsuit").  The Estes and Estes Estate' suit asserted five claims: (1) negligent, grossly negligent, willful, wanton and

reckless conduct of Fissaha; (2) punitive damages against Fissaha; (3) vicarious liability of Passport Transportation; (4) independent negligent and wanton conduct of Passport Transportation; and, (5) reckless, willful, and wanton conduct of Ortez.

The Wrongful Death Lawsuit did not explicitly allege Ortez and Estes were co-employees, but baldly asserted *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985) as the basis for the claim. Kitchen and Lighting Designs Inc. was not named as a party defendant. Ortez made no demands on his employer nor Penn National to defend or indemnify him against the Estes Estate's claims asserted against him.

On 4 March 2019, the Craven County Superior Court entered partial summary judgment on liability against Ortez. On 27 March 2019, the Estes Estate served a motion for summary judgment on damages from both Ortez and, Penn National, along with a notice of hearing setting the motion hearing for 8 April 2019. The Estes Estate served an amended notice of hearing on 4 April 2019, noting its summary judgment motion would be heard on 9 April 2019 at 9:30 a.m. On 5 April 2019, the Estes Estate transmitted a settlement offer to Penn National, offering to execute a covenant not to enforce judgment in favor of Ortez in exchange for delivery of a check in the amount of $30,000 to the office of counsel for the Estate before 3:00 p.m. on 8 April 2019, the day before the amended summary judgment hearing. Penn National agreed to the settlement but asserted it could not deliver the check by the deadline. Counsel for the Estes Estate withdrew the settlement.

The Estes Estate's summary judgment motion was heard on 9 April 2019.

Penn National engaged an attorney to enter a special appearance on behalf of Penn National, seeking to stay the Wrongful Death Lawsuit. The trial court denied the motion to stay. The court heard the motion for summary judgment and entered judgment against Ortez in the amount of $9,500,000 plus interest and costs.

Ortez and the Estes Estate filed a complaint alleging Penn National had breached its duty to defend by failing "to defend a wrongful death claim against [Ortez], and as a result, a judgment of $9,500,000.00 was entered against [Ortez]." Ortez and the Estes Estate also alleged Penn National had breached its duty to settle, and that they had committed unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 58-63-15(11), N.C. Gen. Stat. § 75-1.1 *et seg.* ("Unfair and Deceptive Trade Practices Act") (2023).

Ortez filed a motion for judgment on the pleadings as to his claims for breach of the duty to defend, breach of the duty to settle, and violation of the Unfair and Deceptive Trade Practices Act. The trial court granted Ortez's motion for judgment on the pleadings and entered a judgment entitling him "to recover the sum of $9,649,808.27 from [Penn National] as compensatory damages for breach of the duty to defend, breach of the duty to settle, and unfair and deceptive trade practices" by order entered 19 July 2019. The trial court then trebled the damages and entered judgment in the amount of $28,949,424.80 against Penn National for violating the North Carolina Unfair and Deceptive Trade Practices Act. Penn National appeals.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

### III.    Issues

Penn National contends the trial court erred in concluding: (1) it had a duty to defend; (2) it had breached its duty to defend; (3) it had breached its duty to settle; (4) Ortez was entitled to a judgment as a matter of law on his claim for unfair and deceptive trade practices; and (5) erred in entering a $28.9 million judgment against defendant.

### IV.    Judgment on the Pleadings

### A. Standard of Review

"Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Groves v. Community Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001) (internal citations and quotations omitted). "Judgments on the pleadings are disfavored in law, and the trial court must view the facts and permissible inferences in the light most favorable to the non-moving party." *Id.* (citations omitted).

A trial court's grant of a motion for judgment on the pleadings is reviewed *de novo* by this Court. *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335, *disc. rev. denied,* 360 N.C. 78, 623 S.E.2d 263 (2005).

### B. Analysis

### *1. Duty to Defend*

Penn National contends the trial court erred in granting Ortez's partial Rule 12(c) motion for judgment on the pleadings and asserts a comparison of the policy language and exclusions with the allegations in the pleading negates any duty to defend. We agree.

"An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings . . . . [w]hen the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). Our Supreme Court held long ago an insurer's duty to defend "becomes absolute when the allegations of the complaint bring the claim within the coverage of the policy." *Strickland v. Hughes*, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968).

More recently, our Supreme Court re-affirmed: "In determining whether an insurer has a duty to defend, the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010). Referred to as the "comparison test," the plain language of the insurance policy is reviewed and compared with the plain language of the facts alleged and the pleadings before the court. *Id.*

The allegations in the complaint, as compared with the exclusions in the policy does not require Penn National to defend Ortez. The Penn National Policy states:

SECTION II – LIABILITY COVERAGE

A. Coverage We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto". * * * We will have the right and duty to defend any "insured" against a "suit" asking for such damages … *However, we will have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" … to which this insurance does not apply.* We may investigate and settle any claim or "suit" as we consider appropriate.

(emphasis supplied).

This policy provision clearly provides coverage, to an "insured", but also includes unambiguous exclusions:

B. Exclusions
This insurance does not apply to any of the following:

. . .

5. Fellow Employee
"Bodily injury" to:
 a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or
 b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

The complaint alleged "Defendant Luis J. Ortez is liable to the Plaintiff based on the legal precedent of *Pleasant v. Johnson*, and subsequent legal authority in North Carolina recognizing that legal duty and that legal right of recovery." The

opinion of *Pleasant v. Johnson* provides, ". . . the North Carolina Workers' Compensation Act does not insulate a co-employee from the effects of his willful, wanton and reckless negligence. An injured worker in such situations may receive benefits under the Act and also maintain a common law action against the co-employee." *Pleasant v. Johnson*, 312 N.C. 710, 718, 325 S.E.2d 244, 250.

After our Supreme Court's decision, similar claims asserted between co-workers, not based upon negligence, have been referred to as *Pleasant* claims in this Court's decisions. *See Estate of Baker v. Reinhardt*, 288 N.C. App. 529, 537, 887 S.E.2d 437, 444 (2023); *Blue v. Mountaire Farms, Inc.*, 247 N.C. App. 489, 505, 786 S.E.2d 393, 403 (2016); *Greene v. Barrick*, 198 N.C. App. 647, 650, 680 S.E.2d 727, 730 (2009).

Using the comparison test to compare and assess the plain language of the policy and the allegations in the complaint, it is clear Penn National had no duty to defend Ortez in the Complaint as written. The only claim Estes and the Estes Estate asserted against fellow employee Ortez in the Wrongful Death Lawsuit was the *Pleasant* claim, which could only be asserted by one employee against another employee for injuries resulting from intentional acts. These acts fall squarely within *Pleasant's* exception from the worker's compensation exclusivity of negligence claims and the express and unambiguous policy exclusions stated in Penn National's policy. *Id.*

Plaintiffs argue *Pleasant*, like many landmark cases, embodies more than a single legal proposition. However, *Pleasant* has one clear and distinct holding that has become well-recognized in North Carolina law. *Id.* In cases involving actions asserted between fellow or co-employees, "the Workers, Compensation Act does not shield *a co-employee* from common law liability for willful, wanton and reckless negligence." *Pleasant*, 312 N.C. at 716, 325 S.E.2d at 249 (emphasis supplied). A "*Pleasant* claim" addresses matters relating to the scope and limits of liability among co-workers, rather than to implicate their employer in the litigation involving international torts or "willful, wanton and reckless" acts. *Pleasant's* central holding is unambiguous and occupies a limited, unique, and specific claim between fellow employees for alleged intentional torts. *Id.*

Employer's insurance carriers are allowed to exclude fellow or co-employee intentional torts from coverage in their policies. Worker's Compensation insurance generally covers an employer's liability in negligence actions by and/or between co-employees at work. "[T]he plain language of G.S. 20-279.21(e) . . . allows an exemption from policy coverage of an employee only insofar as there are benefits available to that employee pursuant to North Carolina's Workers' Compensation Act." *South Carolina Ins. Co. v. Smith*, 67 N.C. App. 632, 639, 313 S.E.2d 856, 861 (1984). The North Carolina Workers' Compensation Act provides the sole remedy against the employer for an employee who has been injured by the ordinary negligence of a co-employee. *Id*; *Reece v. Forga*, 138 N.C. App. 703, 705, 531 S.E.2d

881, 882-83 (2000) (The Workers' Compensation Act is "the exclusive remedy in the event of [an] employee's injury by accident in connection with [their] employment.")

The Estes Estate's allegations against Ortez allege "reckless, willful, and wanton conduct" between co-workers, not simple negligence. Employer is not a party to this litigation and no allegations implicate or suggest their employer's complicity or directing Ortez's alleged "reckless, willful, and wanton conduct" toward Estes.

Workers' compensation insurance is designed to cover an employer's liability for an employee's accidental or negligent acts arising out of acts in the course and scope of employment occurring in the workplace. Any conduct outside of that scope— such as intentional or grossly reckless acts—is excluded from coverage under both the Workers' Compensation Act and Penn National's express Fellow Employee exclusion. *Pleasant*, 312 N.C. at 717, 325 S.E.2d at 250. This statute and policy exclusion excludes coverage for employee behaviors arising outside of ordinary negligence, encompassing alleged intentional, reckless, or willful actions, which are beyond those reasonably covered in a typical workplace negligence incident. *Id.*

Under North Carolina law, particularly as clarified in *Pleasant v. Johnson*, workers' compensation indemnity protections do not extend to cases involving willful, wanton, or reckless conduct by a co-employee. *Id.* 312 N.C. at 716, 325 S.E.2d at 249. This precedent leaves room for assertion of personal liability for intentional acts outside of the Workers' Compensation Act's exclusivity. Ortez can be held personally liable for any intentional harm and damage he allegedly caused to Estes and the

- 10 -

Estes Estate. *Id.* Fellow or co-employee exclusions allow employer's insurers to exclude covering claims based upon an employee's gross misconduct or intentional harm, which acts are fundamentally different from the unintentional accidents or minor negligence actions workers' compensation policies address. *Id.; South Carolina Ins. Co*, 67 N.C. App. at 639, 313 S.E.2d at 861.

Requiring the insurer to defend Ortez would defeat the purpose of the Fellow Employee exclusion, which exists to shield the employer and insurer from being required to cover claims rooted in extreme recklessness or willful misconduct, conduct which aligns more closely with intentional harm, than with accidental injury. Courts generally interpret these exclusions to protect employers and their carriers from liability for egregious conduct not arising within the scope of employment-related negligence risk coverage. *Id.*

The holding in *Pleasant* and the purpose behind the Fellow Employee policy exclusion together show the insurer has no duty to defend or indemnify Ortez, particularly where Ortez never demanded his employer or Penn National to provide him with defense counsel. This exclusion is intended to limit coverage strictly to accidental or negligent conduct and not to encompass allegations of extreme or intentional wrongdoing between co-employees. As such, the Estes Estate's assertions of Ortez's alleged reckless and willful conduct are plainly and unambiguously excluded from coverage under the Fellow Employee exclusion in Penn National policy and falls outside the insurer's duty to defend. *Id.*

### 2. *Duty to Settle*

The Penn National policy and the statutes provides insurance carriers with the right to settle under indemnity coverage, not a duty to settle. This right is conferred by the Financial Responsibility Act in N.C. Gen. Stat. §20-30- 279.21(f)(3) (2023), "The insurance carrier shall have the right to settle any claim covered by the policy …"

When exercising its right to settle, the insurer "owes a duty to its insured to act deligently [sic] and in good faith in effecting settlements within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy." *Alford v. Textile Ins. Co.* 248 N.C. 224, 229, 103 S.E.2d 8, 13 (1958).

When Penn National received an offer to settle from the Estes Estate on Friday afternoon, the terms of the settlement required a check for $30,000 to be delivered to its attorney's offices on the following Monday by 3:00 p.m. Penn National replied by agreeing to the settlement and to deliver full payment the following day on Tuesday, which Plaintiffs denied, and withdrew their offer. Asking for a one-day extension to deliver payment to a demanded less-than-one-business-day turnaround does not support a finding and conclusion Penn National had failed to act in good faith to settle. *Id.* N.C. Gen. Stat. §20-30- 279.21(f)(3) (2023).

The trial court erred in finding Penn National had breached its duty to settle the intentional tort claim Estes and the Estes Estate had asserted against Ortez. Penn National had no duty to settle, only the right to seek settlement, which Penn

National chose to exercise when it offered to settle for a $30,000 payment within two business days to the Estes Estate. The trial court's ruling on this issue is erroneous, prejudicial, and reversed.

### 3. *Finding Penn National Violated the Unfair and Deceptive Trade Practices Act*

As noted above, the express policy language and the statute allows insurance companies the right to seek a settlement, not a duty to settle. N.C. Gen. Stat. §20-30- 279.21(f)(3) (2023) ("The insurance carrier shall have the right to settle any claim covered by the policy …")

When exercising its right to settle, the insurer "owes a duty to its insured to act deligently [sic] and in good faith in effecting settlements within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy." *Alford v. Textile Ins. Co.* 248 N.C. 224, 229, 103 S.E.2d 8, 13 (1958). When Penn National received an offer to settle from Estes and the Estes Estate on Friday afternoon, the terms of the settlement included a check for $30,000 to be delivered to its attorney's offices on the following Monday by 3:00 p.m. Penn National replied asking to deliver on Tuesday, which was denied, and Plaintiffs withdrew their offer. Requesting a one-day extension to a demanded one business day turnaround does not support the finding Penn National had failed to act in good faith to settle to trigger treble damages and attorney fees liability under the Unfair and Deceptive Trade Practices Act. N.C. Gen. Stat. § 75-1.1.

The trial court erred in finding that Penn National had breached its duty to settle the claims. No duty to settle arose, only the right to seek settlement, which Penn National tried to exercise when it offered to settle for $30,000 with payment to be made within two business days thereafter in exchange for a covenant not to enforce judgment against Ortez.

The trial court erred in concluding Penn National had failed to act in good faith or committed unfair or deceptive trade practices to trigger treble damages and attorney fees liability under the Unfair and Deceptive Trade Practices Act. N.C. Gen. Stat. § 75-1.1 *et seg*. The trial court's ruling on this issue is erroneous, prejudicial, and reversed.

## V. Conclusion

The trial court erred in granting Ortez's partial motion for a Rule 12(c) judgment on the pleadings. Under the comparison tests of the policy to the allegations and pleadings, Plaintiff failed to allege Penn National had breached its duty to defend or its duty to settle.

Plaintiff also failed to show the employer or Penn National had violated the Unfair and Deceptive Trade Practices Act. *Id.* The trial court erred in trebling the award of damages pursuant to N.C. Gen. Stat. § 75-1.1. The order of the trial court is reversed. *It is so ordered.*

REVERSED.

Judge Stading concurs.

Judge Thompson concurs in result only by separate opinion.

THOMPSON, Judge, concurring in result only.

Because I disagree with the majority's determination that "it is clear that [defendant] Penn National had no duty to defend [plaintiff] Ortez in the complaint as written[,]" I concur in result only.

## A.     Duty to defend

"An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings . . . . [w]hen the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). As our Supreme Court held long ago, an insurer's duty to defend "becomes absolute *when the allegations of the complaint* bring the claim within the coverage of the policy." *Strickland v. Hughes*, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968) (emphasis added).

"In determining whether an insurer has a duty to defend, the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010). "If the insurance policy provides coverage for the facts *as alleged*, then the insurer has a duty to defend." *Id.* (emphasis added). "An insurer is excused from its duty to defend only if the facts are *not even arguably* covered by the policy." *Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 277–78, 708 S.E.2d 138, 144 (2011) (internal quotation marks and citation omitted) (emphasis

added).

Defendant argues that the "fellow employee" provision of the policy nullified its duty to defend plaintiff Ortez in the underlying wrongful death action, and the majority contends that

> [t]he only claim Estes and the Estes Estate asserted against fellow employee [plaintiff] Ortez in the Wrongful Death Lawsuit was the *Pleasant* claim, [under *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985)] which could only be asserted by one employee against another for employee injuries resulting from intentional acts. These acts fall squarely within Pleasant's exception from the worker's compensation exclusivity of negligence claims and the express and unambiguous policy exclusions stated in [defendant] Penn National's policy.

After my review of the *allegations of the complaint*—the guidepost for determining whether an insurer has a duty to defend, per our Supreme Court's longstanding precedent—I would conclude that the trial court did err in determining that defendant had a duty to defend plaintiff Ortez in the underlying wrongful death action. Although there were no allegations *in the complaint* that plaintiff Ortez was a "fellow employee" of decedent Drake Estes at the time of the accident, as the majority notes, the initial complaint alleged that plaintiff "Ortez is liable . . . based on the legal precedent of *Pleasant v. Johnson,* and subsequent legal authority in North Carolina recognizing that legal duty and that legal right of recovery." Although "[a]n insurer is excused from its duty to defend only if the facts are *not even arguably* covered by the policy[,]" *Kubit,* 210 N.C. App. at 277–78, 708 S.E.2d at 144 (internal

2

quotation marks and citation omitted) (emphasis added), I would conclude that this reference to *Pleasant v. Johsnon*[1] did suffice to bring the allegations of the complaint outside of the coverage of the policy, thereby absolving defendant Penn National of their duty to defend. I do not agree that this lone reference in the complaint, made it "*clear* that [defendant] Penn National had no duty to defend [plaintiff] Ortez in the complaint as written[,]" (emphasis added), and seek further clarity from our Supreme Court on whether this allegation in the complaint sufficed to absolve defendant Penn National of their duty to defend for purposes of the "comparison test" established in *Strickland.*

## B. Duty to settle

Finally, the majority contends that "the statutes provide[ ] insurance carriers with the right to settle under indemnity coverage, not a duty to settle." This is not correct, as our courts have *consistently held* that insurance companies owe a duty to their insured to act diligently and in good faith in reaching settlements.

"The law imposes on the insurer the duty of carrying out in good faith its contract of insurance." *Alford v. Textile Ins. Co.*, 248 N.C. 224, 229, 103 S.E.2d 8, 12 (1958). "It is a matter of common knowledge that fair and reasonable settlements can generally be made at much less than the financial burden imposed in litigating

---

[1] In *Pleasant*, our Supreme Court held that "the Worker's Compensation Act does not shield *a co-employee* from common law liability for . . . negligence." *Pleasant*, 312 N.C. 710, 716, 325 S.E.2d 244, 249 (emphasis added).

claims." *Id.* "It is for this reason that courts have *consistently* held that an insurer *owes a duty* to its insured to act diligently and in good faith in *effecting settlements* within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy." *Id.* (emphasis added). "Liability has been repeatedly imposed upon insurance companies because of their failure to act diligently and in good faith in effectuating settlements with claimants." *Id.*

Indeed, our Legislature has enacted N.C. Gen. Stat. § 58-63-15, which defines "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance" as a matter of law, and provides, in pertinent part, that one commits an "Unfair Claim Settlement Practice[ ]" by "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . . ." N.C. Gen. Stat. § 58-63-15(11)(f) (2023).

I agree with the majority that defendant Penn National did not have a duty to defend, nor a duty to settle, but write separately to note that insurance companies in North Carolina *do* "*owe*[ ] *a duty*" to their insured to act diligently and in good faith in *effecting settlements* within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy." *Id.* (emphasis added). For the aforementioned reasons, I concur in result only.